ACCEPTED
14-14-00731-CV
FOURTEENTH COURT OF APPEAL
HOUSTON, TEXAS
3/19/2015 4:08:45 PM
CHRISTOPHER PRIN
CLERK

NO. 14-14-00731-CV

IN THE COURT OF APPEALS FOR THE
FOURTEENTH DISTRICT OF TEXAS

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS
3/19/2015 4:08:45 PM
CHRISTOPHER A. PRINE
Clerk

JOSEPH PRESSIL,

*Appellant*,

v.

JASON A. GIBSON, JASON A. GIBSON, P.C. D/B/A THE GIBSON LAW
FIRM, CLIFFORD D. PEEL, II AND ANDREW C. SMITH,

*Appellees*.

ON APPEAL FROM THE 55TH JUDICIAL DISTRICT
COURT OF HARRIS COUNTY, TEXAS

**BRIEF FOR APPELLEES JASON A. GIBSON, ET AL.**

Richard A. Sheehy
State Bar No. 18178600

Sheehy Ware & Pappas, P.C.
2500 Two Houston Center
909 Fannin Street
Houston, Texas 77010-1003
(713) 951-1000 – Telephone
(713) 951-1199 – Facsimile
E-mail: rsheehy@sheehyware.com

*Attorneys for Defendants and Appellees*
*Jason A. Gibson, Jason A. Gibson, P.C.,*
*The Gibson Law Firm, Clifford D. Peel, II*
*Oral Argument Requested* *and Andrew C. Smith*

**Identity of Parties and Counsel**

Pursuant to Rule 38.2(a), Texas Rules of Appellate Procedure, the following is a list of all parties and counsel involved in this case. This list is included so that the Justices of this Court may evaluate possible disqualification or recusal from participation in the decision of this case on appeal:

**Trial and Appellate Counsel for Plaintiff and Appellant Joseph Pressil:**

Lance Christopher Kassab
State Bar No. 00794070
Email: lck@texaslegalmalpractice.com

David Eric Kassab
State Bar No. 24071351
Email: dek@texaslegalmalpractice.com

The Kassab Law Firm
1420 Alabama
Houston, Texas 77004
Telephone: (713) 522-7400
Facsimile: (713) 522-7410

**Trial and Appellate Counsel for Defendants and Appellees Jason A. Gibson, Jason A. Gibson, P.C. d/b/a The Gibson Law Firm, Clifford D. Peel, II and Andrew C. Smith**

George A. Pappas
State Bar No. 15454800
Email: gpappas@sheehyware.com

Charmaine A. Ferguson
State Bar No. 24012616
Email: cferguson@sheehyware.com

Richard A. Sheehy
State Bar No. 18178600
Email: rsheehy@sheehyware.com

Sheehy, Ware & Pappas, P.C.
2500 Two Houston Center
909 Fannin Street
Houston, Texas  77010
Telephone: (713) 951-1000
Facsimile:   (713) 951-1199

# Table of Contents

Identity of Parties and Counsel ................................................................. ii

Table of Contents ................................................................................... iv

Table of Authorities ................................................................................v

Statement of the Case...............................................................................2

Statement Regarding Oral Argument .......................................................3

Issues Presented ......................................................................................3

Statement of Facts ...................................................................................3

Summary of the Argument.......................................................................8

Argument...............................................................................................10

     I.     Defendants were not required to present any expert testimony in support of their motion for summary judgment on professional negligence...............................................................................12

     II.    Plaintiff could not recover damages in the underlying case. ..............14

     III.   Plaintiff may not recover against the lawyers because the clinic and the laboratory owed him no duty................................................26

Conclusion .............................................................................................32

Certificate of Compliance ......................................................................32

Certificate of Service .............................................................................33

# Table of Authorities

**Cases**

*Akin, Gump, Strauss, Hauer & Feld v. National Development
& Research Corp.*,
   299 S.W.3d 106 (Tex. 2009) ...............................................................11

*Alexander v. Turtur & Associates*,
   146 S.W.3d 113 (Tex. 2004) ................................................... 10, 13

*Ballesteros v. Jones*,
   985 S.W.2d 485 (Tex. App. – San Antonio 1998, pet. denied)..........................11

*Bird v. W.C.W.*,
   868 S.W.2d 767 (Tex. 1994) ...........................................................27

*Brewer v. Standefer*,
   366 S.W.3d 326 (Tex. App. – Dallas 2012, no pet.) ............................................7

*Burns v. Rochon*,
   190 S.W.3d 263 (Tex. App. – Houston [1st Dist.] 2006, no pet.)........................31

*Carr v. Brasher*,
   776 S.W.2d 567 (Tex. 1989) .........................................................26

*City of Tyler v. Likes*,
   962 S.W.2d 489 (Tex. 1997) .........................................................23

*Cockrum v. Baumgartner*,
   447 N.E.2d 385 (Ill. App. 1983), *cert. denied*, 464 U.S. 846 (1983)................22

*Cosgrove v. Grimes*,
   774 S.W.2d 662 (Tex. 1989) .........................................................12

*Crawford v. Kirk,*
   929 S.W.2d 633 (Tex. App. – Texarkana 1996, writ denied) ..................... 16, 24

*Del Lago Partners v. Smith*,
   307 S.W.3d 762 (Tex. 2010) ................................................. 24, 25

*Diversicare General Partner v. Rubio*,
185 S.W.3d 842 (Tex. 2005) ..............................................................................30

*Diversified Financial Systems v. Hill, Heard, O'Neal, Gilstrap & Goetz*,
63 S.W.3d 795 (Tex. 2001).................................................................................2

*Escabedo v. Haygood*,
283 S.W.3d 3 (Tex. App. – Tyler 2009), *affirmed*,
356 S.W.3d 390 (Tex. 2011) ..............................................................................14

*Farmer v. Ben E. Keith Co.*,
919 S.W.2d 171 (Tex. App. – Fort Worth 1996, no writ) ..................................26

*FFE Transportation Services v. Fulgham*,
154 S.W.3d 84 (Tex. 2004)................................................................................27

*Fifth Club Inc. v. Ramirez*,
196 S.W.3d 788 (Tex. 2006) ..............................................................................23

*Flanary v. Mills*,
150 S.W.3d 785 (Tex. App. – Austin 2004, pet. denied) ...................................14

*Flax v. McNew*,
896 S.W.2d 839 (Tex. App. – Waco 1995, no writ)................................... 16, 17

*Fleming v. Kenney ex rel. Shelton*,
395 S.W.3d 917 (Tex. App. – Houston [14th Dist.] 2013, pet. denied)..............14

*Ford Motor Co. v. Miles*,
967 S.W.2d 377 (Tex. 1998) ..............................................................................16

*Freeman v. City of Pasadena*,
744 S.W.2d 923 (Tex. 1988) ..............................................................................23

*Garwood v. Locke*,
552 S.W.2d 892 (Tex. Civ. App. – San Antonio 1977, writ ref'd n.r.e.) ...........16

*Greenberg Traurig v. Moody*,
161 S.W.3d 56 (Tex. App. – Houston [14th Dist.] 2004, no pet.).......................14

*Hays v. Hall*,
488 S.W.2d 412 (Tex. 1972) ..............................................................................15

*Hickman v. Myers*,
632 S.W.2d 869 (Tex. App. – Fort Worth 1982, writ ref'd n.r.e.) .............. 17, 21

*Hoover v. Larkin*,
196 S.W.3d 227 (Tex. App. – Houston [1st Dist.] 2006, pet. denied) ................10

*Horizon Shipbuilding v. Blyn II Holding*,
324 S.W.3d 840 (Tex. App. – Houston [14th Dist.] 2010, no pet.) ....................31

*Hunsaker v. Fustok*,
238 S.W.3d 421 (Tex. App. – Houston [1st Dist.] 2007, no pet.)........................7

*In re: H.C.S.*,
219 S.W.3d 33 (Tex. App. – San Antonio 2006, no pet.) .................................29

*Jacobs v. Theimer*,
519 S.W.2d 846 (Tex. 1975) .................................................... 15, 24

*Johnston v. Sibley*,
558 S.W.2d 135 (Tex. Civ. App. – Tyler 1977, writ ref'd n.r.e.)......................28

*K.B. v. N.B.*,
811 S.W.2d 634 (Tex. App. – San Antonio 1991, writ denied),
*cert. denied*, 504 U.S. 918 (1992).......................................................31

*Kelley & Witherspoon, LLP v. Hooper*,
401 S.W.3d 841 (Tex. App. – Dallas 2013, no pet.) .................................. 10, 11

*Moore v. Lillebo*,
722 S.W.2d 683 (Tex. 1986) ..............................................................23

*Nelson v. Krusen*,
678 S.W.2d 918 (Tex. 1984) .................................................... 16, 24

*Park v. Exxon Mobil Corp.*,
429 S.W.3d 142 (Tex. App. – Dallas 2014, pet. denied)..................................13

*Parkway Co. v. Woodruff*,
901 S.W.2d 434 (Tex. 1995) ..............................................................23

*Phillips v. Irons*,
2005 WL 4694579 (Ill. App. 2005)........................................................31

*Planned Parenthood v. Danforth*,
428 U.S. 52 (1976)......................................................................................29

*Progressive County Mutual Ins. Co. v. Delgado*,
335 S.W.3d 689 (Tex. App. – Amarillo 2011, pet. denied) ...............................14

*Ramirez v. Carreras*,
10 SW.3d 757 (Tex. App. – Corpus Christi 2000, pet. denied) ........................28

*Reagan v. Vaughn*,
804 S.W.2d 463 (Tex. 1990) ........................................................................16

*Rose v. First American Title Ins. Co.*,
907 S.W.2d 639 (Tex. App. – Corpus Christi 1995, no writ) ...........................31

*Salas v. Gamboa*,
760 S.W.2d 838 (Tex. App. – San Antonio 1988, no writ)...............................27

*Service Corp International v. Guerra*,
348 S.W.3d 221 (Tex. 2011) ........................................................................23

*Silva v. Howe*,
608 S.W.2d 840 (Tex. Civ. App. – Corpus Christi 1980, writ ref'd n.r.e.)........17

*St. John v. Pope*,
901 S.W.2d 420 (Tex. 1995) ........................................................................27

*Sutkin v. Beck*,
629 S.W.2d 131 (Tex. App. – Dallas 1982, writ ref'd n.r.e.)................ 15, 17, 21

*Taylor v. Alonso, Cersonsky & Garcia*,
395 S.W.3d 178 (Tex. App. – Houston [1st Dist.] 2012, no pet.).......................11

*Terrell v. Garcia*,
496 S.W.2d 124 (Tex. Civ. App – San Antonio 1973, writ ref'd n.r.e.),
*cert. denied*, 415 U.S. 927 (1974)............................................................. 15, 17

*Timberwalk Apartments v. Cain*,
972 S.W.2d 749 (Tex. 1998) ........................................................................13

*Tobin v. Grossman*,
24 N.Y.2d 609, 249 N.E.2d 419 (1969)...........................................................24

*Torrington Co. v. Stutzman,*
    46 S.W.3d 829 (Tex. 2000)........................................................................27

*Trammell Crow Central Texas v. Gutierrez,*
    267 S.W.3d 9 (Tex. 2008).........................................................................13

*Turtle Healthcare Group v. Linan,*
    337 S.W.3d 865 (Tex. 2011) .....................................................................30

*Unifund CCR Partners v. Weaver,*
    262 S.W.3d 796 (Tex. 2008) .....................................................................12

*Walden v. Affiliated Computer Services,*
    97 S.W.3d 303 (Tex. App. – Houston [14[th] Dist.] 2003, pet. denied)................13

*Washington v. Glucksberg,*
    521 U.S. 702 (1997)...................................................................................30

*Williams v. Briscoe,*
    137 S.W.3d 120 (Tex. App. – Houston [1[st] Dist.] 2004, no pet.).......................11

*Wilson v. Ferguson,*
    747 S.W.2d 499 (Tex. App. – Tyler 1988, writ denied)....................................23

*Zapata v. Rosenfeld,*
    811 S.W.2d 182 (Tex. App. – Houston [1[st] Dist.] 1991, writ denied)......... 15, 17

## Statutes

TEX. CIV. PRAC. & REM. CODE § 74.001(a)(2)(13) ....................................................28

TEX. CIV. PRAC. & REM. CODE § 74.351.................................................................7

TEX. FAM. CODE § 160.7031 ..............................................................................28

TEX. FAM. CODE § 160.7031(b) ..........................................................................28

TEX. FAM. CODE § 160.704(a) ...........................................................................28

TEX. FAM. CODE § 160.702.................................................................................28

TEX. FAM. CODE § 160.703.................................................................................29

## Rules

TEX. R. APP. P. 9.4(i)(3) ...............................................................................32

TEX. R. APP. P. 38.1(g) .................................................................................4

TEX. R. APP. P. 38.2(a) .................................................................................2

TEX. R. CIV. P. 166a ...................................................................................12

TEX. R. CIV. P. 166a(c) ...............................................................................12

## Other Authorities

20 Dorsaneo, *Texas Litigation Guide* § 322.02[1][c] ...............................................11

4 Mallen & Smith, *Legal Malpractice* § 33.17 (2007) ............................................13

Adams, *From Babel to Reason: An Examination of the Duty Issue*,
31 McGeorge L. Rev. 25, 53 (1999) ......................................................................24

*Annot.*, "Recoverability of cost of raising normal healthy child born
as a result of physician's negligence." 89 A.L.R. 4th 632 (1991 and Supp.) ...........17

*Annot.*, "Rights and Obligations Resulting from Human Artificial
Insemination," 83 A.L.R. 4th 295 .......................................................................29

NO. 14-14-00731-CV

IN THE COURT OF APPEALS FOR THE
FOURTEENTH DISTRICT OF TEXAS

JOSEPH PRESSIL,

*Appellant*,

v.

JASON A. GIBSON, JASON A. GIBSON, P.C. D/B/A THE GIBSON LAW
FIRM, CLIFFORD D. PEEL, II AND ANDREW C. SMITH,

*Appellees*.

ON APPEAL FROM THE 55TH JUDICIAL DISTRICT
COURT OF HARRIS COUNTY, TEXAS

**BRIEF FOR APPELLEES JASON A. GIBSON, ET AL.**

*To the Honorable Court of Appeals*:

Defendants and Appellees Jason A. Gibson, Jason A. Gibson, P.C. d/b/a The Gibson Law Firm, Clifford D. Peel, II, and Andrew C. Smith ("Defendants" or "lawyers") file this brief in support of a summary judgment entered in their favor in Cause No. 2013-51350A; *Joseph Pressil v. Jason A. Gibson, et al.*; in the 55th Judicial District Court of Harris County, Texas, before the Honorable Jeff Shadwick, Judge Presiding.

## Statement of the Case

Plaintiff Joseph Pressil ("Plaintiff") brought this action against Defendants to recover damages allegedly sustained as a result of legal malpractice. (C.R. 5, 183). Plaintiff claims generally that the lawyers were negligent in the handling of a lawsuit against a fertility clinic for inseminating Plaintiff's former girlfriend with his sperm without his knowledge or consent. (*Id.*; Brief for Plaintiff at 1). *See* (C.R. 332)(Original Petition in underlying case). Plaintiff based his claims against the lawyers on theories of negligence, breach of fiduciary duty, and gross negligence. (C.R. 5, 183).

The trial court granted Defendants' motion for summary judgment on the claim for professional negligence, but denied the motion on the claims for breach of fiduciary duty and gross negligence. (C.R. 18, 472). The court then granted Plaintiff's motion to sever the claim based on professional negligence to make the summary judgment on that claim final. (C.R. 480); *see Diversified Financial Systems v. Hill, Heard, O'Neal, Gilstrap & Goetz*, 63 S.W.3d 795 (Tex. 2001)("As a rule, the severance of an interlocutory judgment into a separate cause makes it final."). Plaintiff took this appeal from that judgment. (C.R. 490).[1]

---

[1] The claims for breach of fiduciary duty and gross negligence are still pending but the trial court abated them while this case is on appeal. (C.R. 482). The trial court decided it was "too early" in the case to deal with the issue of fiduciary duty. (R.R. 25).

## Statement Regarding Oral Argument

The lawyers would welcome the chance to present oral argument to the Court if the Court believes that oral argument would be helpful to resolve the issues in this case. However, the lawyers also submit that the Court can affirm the summary judgment based on settled principles of Texas law.

## Issues Presented

(1)     The lawyers were not required to present expert testimony in support of their motion for summary judgment because the issue before the trial court was whether Plaintiff could recover against the fertility clinic in the underlying case as a matter of law.

(2)     The trial court properly held that Plaintiff could recover no damages against the fertility clinic in the underlying case as a matter of law.

(3)     The trial court properly held that Plaintiff could not recover against the fertility clinic in the underlying case because the clinic owed him no duty.

## Statement of Facts

The facts that support the summary judgment in this case are not really in dispute. They can be easily and simply stated. As a result, Plaintiff's rambling statement of facts for fourteen (14) pages in his brief is not relevant in large part to any issue before this Court. (Brief for Plaintiff at 3-16). In particular, Plaintiff argues at length his version of the facts to support his claim for breach of fiduciary

duty which is not part of this appeal. (*Id.* at 7, 9-10, 11, 13). He also argues facts that he claims show that the lawyers were negligent. (*Id.* at 8-9, 10-12, 14). The lawyers deny strongly that they breached any duty or standard of care but this appeal is not about the lawyers' conduct; it is about Plaintiff's inability to recover in the underlying case. (C.R. 472)(order on motion for summary judgment).

The lawyers can only assume that Plaintiff included the discussion about these issues in an attempt to prejudice the Court against them. The Court may properly wonder if Plaintiff spent so much space in his brief writing about irrelevant issues because he wants to avoid the relevant ones. *Contra* TEX. R. APP. P. 38.1(g)(brief should state concisely and without argument the facts that are pertinent to the issues on appeal). The issues before the Court are narrow and the relevant facts are also narrow.

Plaintiff met Anetria Burnette in Miami and began a romantic relationship with her in May 2006. (C.R. 73, 249). He later bought a home in Houston and allowed her to live there. (C.R. 66, 68, 73). He was working in New York during the week at the time but planned to move to Houston and open a nightclub. (C.R. 77). The couple was sexually active during their relationship although Plaintiff said that they used birth control to avoid pregnancy. (C.R. 73, 75, 184).

Burnette apparently had medical issues related to cysts on her ovaries. (C.R. 75, 250). Plaintiff added her to his health insurance soon after they began dating.

(C.R. 74, 279). He had done so in the past for at least one previous girlfriend. (*Id.*; Brief for Plaintiff at 3). The claim forms for the insurance reflect that Burnette was Plaintiff's spouse. (C.R. 159-62). Plaintiff was aware that Burnette called herself Anetria Pressil during their relationship. (C.R. 67).

The couple ended their relationship after about four (4) months in September 2006. (C.R. 73, 279). Plaintiff allowed Burnette to live in the house even after the couple broke up. (C.R. 80). The couple continued to have sexual relations after September while she was still living in the house. (*Id.*). Burnette even remained on his insurance plan until September 2007. (C.R. 81, 203, 279). Eventually, Plaintiff sold the house in 2012 at about the time Burnette moved out. (C.R. 67, 83).

In February 2007, Burnette told Plaintiff that she was pregnant. (C.R. 80, 204). Plaintiff did not agree that he was the father of Burnette's children during her pregnancy. (C.R. 78); *but see* (C.R. 280)(Plaintiff's affidavit contradicts deposition testimony about acceptance of paternity before birth). Burnette gave birth to twins in November 2007. (C.R. 68). Plaintiff accepted paternity of the children after they were born. (C.R. 78). Plaintiff provided some voluntary support for the children in the form of monthly payments. (C.R. 89). The twins are doing well. (C.R. 68).[2]

---

[2] Although Plaintiff states in his pleadings that he told Burnette that he did not want children, he testified under oath that he did not discuss children with her. *Compare* (C.R. 184)(Second Amended Petition) *with* (C.R. 74)(deposition). Burnette said that she thought Plaintiff knew about her efforts to get pregnant. (C.R. 86). She considered the children "a gift from God." (C.R. 279, 309).

A friend went to the house to gather Plaintiff's belongings in January 2011. (C.R. 83-84). When his friend brought his mail to him, Plaintiff saw a receipt from Omni-Med Laboratory which is associated with Advanced Fertility Clinic of Texas. (C.R. 82, 111, 185). The receipt indicated that Pressil had a diagnosis of male infertility and had preserved his sperm through cryopreservation, that is, storage at low temperatures. (C.R. 111, 257, 286). He did not call Burnette but contacted the laboratory which referred him to the fertility clinic. (C.R. 84-85). He went to the fertility clinic about a month after he saw the receipt and the clinic in turn referred him to its legal counsel. (C.R. 85-86, 280). It appears that Burnette may have used Plaintiff's sperm from a used condom for the *in vitro* procedure. (C.R. 78). The clinic noted that it received the sample from a woman purporting to be Plaintiff's wife. (C.R. 205, 280; Brief for Plaintiff at 5).[3]

Plaintiff contacted several law firms in Texas to file a lawsuit for fraud against the fertility clinic but he was not successful in retaining counsel. (C.R. 87, 91). He then contacted the Gibson Law Firm through its website on November 6, 2011. (C.R. 87-88, 186). That same day, Jason Gibson spoke with Plaintiff about potential representation. (*Id.*; Brief for Plaintiff at 7). Ultimately, on November 21, 2011, Plaintiff signed a power of attorney and fee agreement and hired the firm to

---

[3] Plaintiff filed the underlying case against both the laboratory and the fertility clinic.(C.R. 332). The issues in this Court are the same as to both parties so the lawyers will refer to them jointly as the "fertility clinic" or "clinic" as a matter of convenience.

6

represent him. (C.R. 92, 115, 186).

Gibson filed the lawsuit on Plaintiff's behalf against the fertility clinic on November 21, 2011, the same day Plaintiff signed the agreement with the law firm. (C.R. 115, 120, 332). The basis of the claim was that the fertility clinic failed to obtain Plaintiff's consent before using the sample. (*Id.*; Brief for Plaintiff at 6). The clinic filed a motion to dismiss the case because Plaintiff did not serve an expert report pursuant to TEX. CIV. PRAC. & REM. CODE § 74.351. (C.R. 129, 187). The law firm responded to the motion on Plaintiff's behalf, but the trial court in the underlying case granted the motion and dismissed the case with prejudice. (C.R. 144, 151). Plaintiff did not appeal that decision although there is some dispute about the reason why.[4]

Plaintiff then brought this action against the lawyers for negligence, breach of fiduciary duty, and gross negligence. (C.R. 5, 181). The claim for negligence was based on the dismissal of the underlying case for failing to serve an expert report. (*Id.*). The claim for breach of fiduciary duty was based on Plaintiff's theory

---

[4] Although the issue is not relevant in this appeal, Plaintiff claims that one reason he did not appeal was because Gibson told him in error that he would have to pay the clinic's attorneys' fees on appeal. (C.R. 97, 188; Brief for Plaintiff at 12). However, Gibson's advice, if he in fact gave it, may well have been correct. (C.R. 261)(clinic asks for all relief to which it was entitled); *Brewer v. Standefer*, 366 S.W.3d 326 (Tex. App. – Dallas 2012, no pet.)(award of attorneys' fees mandatory when medical defendant asked for all relief to which it was entitled); *Hunsaker v. Fustok*, 238 S.W.3d 421 (Tex. App. – Houston [1st Dist.] 2007, no pet.)(award of fees for appeal appropriate under statute). There was also evidence that the fertility clinic had no insurance so an appeal made no sense anyway. (C.R. 94, 96-97, 296, 396; Brief for Plaintiff at 13).

that Gibson sought media coverage for this case for the benefit of the law firm and contrary to Plaintiff's interests.   (*Id.;* C.R. 202).

The lawyers filed a motion for summary judgment on all theories of liability. (C.R. 18). The court granted the motion for the claims based on negligence, that is, for all claims in which Plaintiff had to prove a "case within a case" to recover. (C.R. 472).  The court denied the motion on the claim for breach of fiduciary duty, finding that the record had not been developed fully enough for the court to grant that motion. (*Id.*; *see also* R.R. 25). Plaintiff then asked the court to sever his claim for professional negligence to make the order on that claim final. (C.R. 486). The court granted the motion and Plaintiff filed an appeal from the partial summary judgment. (*Id.*; C.R. 490).[5]

## Summary of the Argument

(1)   Defendants did not have to present expert testimony in support of their motion for summary judgment. The issue before the Court is not whether Defendants were negligent, although they deny that they were, but whether Plaintiff can show that he could have recovered a judgment in the underlying case but for Defendants' negligence. The court below found that Plaintiff could not recover damages based on the birth of healthy children and that the fertility clinic

---

[5] The Court also denied Defendants' motion for summary judgment based on limitations. (C.R. 472). Again, the issue of limitations is not before the Court but Plaintiff insisted on discussing it in his brief. (Brief for Plaintiff at 6).

8

owed him no duty. Both issues are questions of law that are not the proper subject of testimony by an expert. The trial court's ruling was based on the nature of the case and settled Texas law; it did not depend on a breach of a standard of care.

(2)     Plaintiff could not recover any damages against the fertility clinic as a matter of law so any negligence by the lawyers could not have caused any damage to him. He may not recover any costs or expenses to raise children who are born healthy. He essentially concedes that he is not able to do so, but seeks to recover damages for mental anguish for having to "deal with" their Mother. Texas law does not recognize a claim for such damages under essentially the same reasoning that Plaintiff cannot recover expenses after the birth of a healthy child. Plaintiff's theory would extend recovery of damages for mental anguish far beyond any reasonable limit. If Plaintiff has a problem with actions taken by the Mother, he has legal and personal options to address the problem. The damages against the fertility clinic were simply too speculative.

Plaintiff also may not recover any damages for medical expenses for the birth of the children. There were no complications to either the children or the Mother. This pregnancy was not wrongful in any way. It was fully planned and intended by the Mother. Plaintiff had no compensable loss because the expenses would have been incurred anyway given that the Mother intended her pregnancy and the birth of the children.

(3)     Plaintiff also cannot recover against the lawyers because the fertility clinic owed no duty to him. The fertility clinic may have had guidelines for its own operations but those guidelines are not the legal standard for medical negligence. The Mother had the right to decide if she was going to get pregnant. Even more compelling, a sperm donor is not considered a parent by statute. The Court need not reach the issue because the Court can affirm the summary judgment on other grounds, but the fertility clinic has no duty to notify any donor that his sperm was going to be used for *in vitro* fertilization. Plaintiff's claims in the underlying case were doomed to failure.

**Argument**

The trial court granted summary judgment to the lawyers on Plaintiff's claim for legal malpractice in the handling of the underlying litigation. For Plaintiff to prevail on that claim against the lawyers, he must show that the lawyers' acts or omissions proximately caused his injury. *Alexander v. Turtur & Associates*, 146 S.W.3d 113 (Tex. 2004); *Hoover v. Larkin*, 196 S.W.3d 227 (Tex. App. – Houston [1st Dist.] 2006, pet. denied). In this context, Plaintiff can prove causation only if he can show that he would have prevailed in the underlying case but for the Defendants' negligence. *Alexander*, *supra* at 117; *Kelley & Witherspoon, LLP v. Hooper*, 401 S.W.3d 841 (Tex. App. – Dallas 2013, no pet.). The courts refer to

10

this concept as plaintiffs proving a "case within a case." *Hooper, supra* at 847; *Taylor v. Alonso, Cersonsky & Garcia*, 395 S.W.3d 178 (Tex. App. – Houston [1st Dist.] 2012, no pet.); *see also* (R.R. 6)(Plaintiff agrees he has to prove "case within a case"). Stated another way, if Plaintiff could not recover against the clinic in the underlying case, any negligence by the lawyers could not have been a proximate cause of damages to him as a matter of law. *Hooper, supra* at 847; *Williams v. Briscoe*, 137 S.W.3d 120 (Tex. App. – Houston [1st Dist.] 2004, no pet.).

> When the malpractice claim has to do with negligence, however, the plaintiff must prove that "but for" the attorney's negligence, it was more likely than not that the plaintiff would have both won the underlying suit and obtained a collectible judgment against another party.

20 Dorsaneo, *Texas Litigation Guide* § 322.02[1][c], *citing Ballesteros v. Jones*, 985 S.W.2d 485, 489 (Tex. App. – San Antonio 1998, pet. denied); *see also Akin, Gump, Strauss, Hauer & Feld v. National Development & Research Corp.*, 299 S.W.3d 106 (Tex. 2009).

The trial court here specifically granted summary judgment using the common phrase "case within a case" clearly intending to grant summary judgment on all causes of action arising out of the lawyers' handling of Plaintiff's claims in the underlying case. As the trial court concluded, Plaintiff cannot prove that he would have prevailed in that case for two separate and independent legal reasons: (1) he could not recover any damages; and (2) the fertility clinic owed him no duty.

11

**I.    Defendants were not required to present any expert testimony in support of their motion for summary judgment on professional negligence.**

At the onset, Plaintiff makes a procedural argument that the trial court should not have granted the lawyers' motion for summary judgment because the motion was not supported by expert testimony. (Brief for Plaintiff at 22). This argument is based on a flawed reading of Defendants' motion and Rule 166a. Defendants filed the motion under the traditional standard in Rule 166a(c) relying primarily on Plaintiff's own deposition testimony and pleadings. (C.R. 18). The issue in the motion was not whether Defendants were negligent, although they were not, but whether Plaintiff could have recovered any money against the fertility clinic in the underlying case.  Certainly, lawyers cannot be held liable "for all of their clients' unfulfilled expectations." *Cosgrove v. Grimes*, 774 S.W.2d 662, 665 (Tex. 1989).

(1)    Plaintiff waived this argument by not raising it in the trial court. (C.R. 198)(response to motion); (C.R. 475)(post-submission letter brief to the court). Under Rule 166a(c), "Issues not expressly presented to the trial court by written motion, answer or other response shall not considered on appeal as grounds for reversal." *See also Unifund CCR Partners v. Weaver*, 262 S.W.3d 796 (Tex. 2008). Plaintiff never gave the trial court the chance to consider this argument so he has waived it in this Court.

(2)     Regardless, Plaintiff also fails on the merits. Defendants recognize that expert testimony is sometimes necessary in claims involving professional negligence. *E.g., Alexander v. Turtur & Associates*, 146 S.W.3d 113 (Tex. 2004); *see generally* 4 Mallen & Smith, *Legal Malpractice* § 33.17 (2007). However, expert testimony was not necessary or even proper here because the measure of damages and existence of a duty in the underlying case were questions of law for the court based on the pleadings and nature of the case. The Court need not decide whether any act or omission by the lawyers fell below the standard of care; the Court need only decide if Plaintiff could have succeeded in the underlying case against the clinic. That question does not deal at all with the lawyers' conduct.

Both bases for the trial court's decision are questions of law. First, it is well settled under Texas law that the existence of a duty is a question of law for the court. *Trammell Crow Central Texas v. Gutierrez*, 267 S.W.3d 9 (Tex. 2008); *Timberwalk Apartments v. Cain*, 972 S.W.2d 749 (Tex. 1998). "The existence of a duty is a matter for the court, rather than an expert witness to decide." *Park v. Exxon Mobil Corp.*, 429 S.W.3d 142, 156 (Tex. App. – Dallas 2014, pet. denied).

Second, it is equally well settled that *whether* Plaintiff can recover damages is also a question of law for the court, even though the *amount* of damages may be a question of fact for the jury. *Walden v. Affiliated Computer Services*, 97 S.W.3d 303 (Tex. App. – Houston [14th Dist.] 2003, pet. denied); *Escabedo v. Haygood*,

13

283 S.W.3d 3 (Tex. App. – Tyler 2009), *affirmed*, 356 S.W.3d 390 (Tex. 2011); *Progressive County Mutual Ins. Co. v. Delgado*, 335 S.W.3d 689 (Tex. App. – Amarillo 2011, pet. denied); *Flanary v. Mills*, 150 S.W.3d 785 (Tex. App. – Austin 2004, pet. denied).

The arguments in the lawyers' motion for summary judgment on the malpractice claim were based on questions of law. It was not necessary for Defendants to present any expert evidence to support those arguments; indeed, it would not have been proper for them to do so. Experts may not testify on questions of law because that testimony interferes with the court's role to decide what the law is. *Greenberg Traurig v. Moody*, 161 S.W.3d 56 (Tex. App. – Houston [14[th] Dist.] 2004, no pet.); *Fleming v. Kenney ex rel. Shelton*, 395 S.W.3d 917 (Tex. App. – Houston [14[th] Dist.] 2013, pet. denied). *See also* (R.R. 8)(trial court points out and Plaintiff agrees that: "The report of an expert on a legal issue is just your belief."). Expert testimony was neither necessary nor appropriate.

## II. Plaintiff could not recover damages in the underlying case.

At the onset, it may be helpful to note other cases that involve claims for damages based on the birth of children and their effect on the family. Although Plaintiff cannot assert these claims, the reasoning of these cases is instructive:

- Plaintiff's children were born healthy and without any complications. Plaintiff cannot assert a claim for "wrongful birth" which is usually brought by

parents for their own damages for negligence leading to the birth of a child with medical problems. Plaintiffs in such cases often argue the defendant negligently administered or omitted fetal testing. *E.g., Jacobs v. Theimer*, 519 S.W.2d 846 (Tex. 1975)(court recognizes cause of action but limits damages to costs to treat child's mental or physical impairment); *Hays v. Hall*, 488 S.W.2d 412 (Tex. 1972)(parents of impaired child born due to negligence may only recover costs of child's care and treatment).

- Burnette's pregnancy was not unexpected but planned. She wanted to get pregnant and delivered healthy children. Plaintiff cannot assert a claim for "wrongful pregnancy" which is usually brought by parents of a healthy but unplanned child for negligence leading to conception or pregnancy. The birth often happens after an unsuccessful sterilization procedure. *E.g., Zapata v. Rosenfeld*, 811 S.W.2d 182 (Tex. App. – Houston [1st Dist.] 1991, writ denied)(Texas does not recognize a cause of action for wrongful pregnancy); *citing Sutkin v. Beck*, 629 S.W.2d 131 (Tex. App. – Dallas 1982, writ ref'd n.r.e.); *Terrell v. Garcia*, 496 S.W.2d 124, 128 (Tex. Civ. App. – San Antonio 1973, writ ref'd n.r.e.), *cert. denied*, 415 U.S. 927 (1974)("Who can place a price tag on a child's smile or the parental pride in a child's achievement?").

- Because the children were born healthy, and remain healthy, Plaintiff cannot assert a claim for "wrongful life" which is an action brought by or on behalf

of a child with a physical or mental deficiency for her own damages for negligence that caused her impaired life. *E.g., Nelson v. Krusen*, 678 S.W.2d 918, 925 (Tex. 1984)(court rejects cause of action for wrongful life because "it is impossible to rationally decide whether the plaintiff has been damaged at all").

- The Mother here did not suffer any health issues or complications as a result of the pregnancy or birth of the children. She is not a party to this case. She does not claim that the children were unwanted or that her pregnancy or the birth of the children caused her any unnecessary pain, suffering or disability. As a result, this case does not involve a claim by the Mother for any adverse health effects to her caused by a wrongful pregnancy or birth of the children. *E.g., Flax v. McNew*, 896 S.W.2d 839 (Tex. App. – Waco 1995, no writ); *Garwood v. Locke*, 552 S.W.2d 892 (Tex. Civ. App. – San Antonio 1977, writ ref'd n.r.e.). Plaintiff would not be able to collect damages anyway based on any injuries to Burnette because he was not her spouse. *See Reagan v. Vaughn*, 804 S.W.2d 463 (Tex. 1990); *Ford Motor Co. v. Miles*, 967 S.W.2d 377 (Tex. 1998)(limiting loss of consortium claims to spousal and parent-child relationships).[6]

Plaintiff is correct that no case in Texas has allowed a cause of action for the damages that he is claiming in this case. *See* (C.R. 219, 459; Brief for Plaintiff at

---

[6] Whether *Flax* and *Garwood* are still viable is an open question but Defendants cite them for purposes of illustration. *See Crawford v. Kirk,* 929 S.W.2d 633 (Tex. App. – Texarkana 1996, writ denied)(court questions whether the cases are good law).

16

29). Certainly, Plaintiff may not recover any damages based on the expenses of raising and educating his children. Such recovery has been rejected continuously and unanimously by the Texas courts. *Zapata v. Rosenfeld*, *supra* (court rejects claim for the cost of raising an unwanted child); *Sutkin v. Beck*, *supra* (court relies on precedent to reject claim for damages); *Silva v. Howe*, 608 S.W.2d 840, 842 (Tex. Civ. App. – Corpus Christi 1980, writ ref'd n.r.e.)("A parent is not entitled to recover damages from a physician for the projected expenses of rearing and educating an unwanted child."); *Hickman v. Myers*, 632 S.W.2d 869, 870 (Tex. App. – Fort Worth 1982, writ ref'd n.r.e.)("Public policy deems the birth of a healthy child a precious gift rather than a compensable wrong."); *Terrell v. Garcia*, *supra* at 128 ("the satisfaction, joy and companionship which normal parents have in rearing a child make such economic loss worthwhile"); *Flax v. McNew*, *supra* at 840 ("All parties recognize that damages related to the education and maintenance of a normal, healthy child are not recoverable."). Texas law is clearly the majority view. *See generally Annot.*, "Recoverability of cost of raising normal healthy child born as a result of physician's negligence," 89 A.L.R. 4th 632 (1991 and Supp.).

Plaintiff appears to agree with this line of cases, although his position is confusing on this issue. *Compare* (C.R. 222)("Plaintiff is not seeking mental anguish damages or damages for the maintenance or rearing his children.") *and* (Brief for Plaintiff at 50)(financial burden on Plaintiff may be outweighed by the

joy he receives from his children) *and* (*Id.* at 48)(children are not causing Plaintiff mental anguish) *with* (*Id.* at 44)("This lawsuit is *not necessarily* about the damages for the maintenance of rearing the children.")(emphasis added) *and* (*Id.* at 40) (Plaintiff argues that "nine out of ten" Texas courts of appeals have recognized a cause of action for wrongful pregnancy).

Regardless, there is little question that Plaintiff has no claim for the expenses associated with raising the children. Plaintiff's citation to these "nine out of ten" courts is misleading at best. This case does not involve a "wrongful pregnancy" because Burnette fully intended the pregnancy and birth. Further, not one of these courts has allowed a parent to recover the expenses of raising a healthy child or the mental anguish damages that Plaintiff seeks here.

The analysis is the same whether a child is born because of a failed sterilization procedure or an *in vitro* fertilization that the father did not want. The conclusion that a father may not recover the costs of raising a healthy child is equally compelling under either scenario. Plaintiff argues that the long line of cases that denies him recovery do not apply because the case does not involve "wrongful pregnancy." (Brief for Plaintiff at 48-51). That argument flatly misses the point. Regardless of the term for his claim, the question is whether he can collect the costs and expenses of raising the twins under any theory. Texas law does not allow such recovery for reasons unrelated to the actual cause of action. As a matter of

strong public policy, a plaintiff may not recover the cost of raising healthy children regardless of how they are conceived or how Plaintiff describes his claim.

Although it is also not clear, it appears that Plaintiff is making a claim for two categories of damages. First, he argues that he should be allowed to recover the medical costs related with the children's birth. (C.R. 221; Brief for Plaintiff at 42-43). Some Texas courts have recognized a claim for such expenses when a child is born after a failed sterilization procedure. (*Supra* at 15). Here, however, the fundamental premise for the award of such damages is missing. The pregnancy and birth were not unplanned, unwelcome, or based on a failed procedure. Burnette wanted these children and she fully intended to become pregnant. The expenses of pregnancy and childbirth would have been incurred once Burnette decided that she wanted to have children. The doctors who cared for the Mother provided services that were necessary based on a conscious decision by the Mother to have children. They should be compensated for their services which were performed properly.

The cases that have allowed the recovery of such medical expenses as damages are all situations where parents would not have incurred those expenses but for the negligence of doctors who were supposed to prevent the pregnancy. The costs of the pregnancy and birth here were not incurred because of fault but were the reasonable and necessary costs of a medical procedure that the Mother voluntarily wanted. Even if Plaintiff paid those expenses, which is doubtful on this

record, the expenses were expected and intended. Plaintiff simply suffered no compensable wrong.

Second, Plaintiff argues that he is entitled to recover mental anguish for having to "deal with the mother of his children," and that he should be allowed to decide "who the mother of his children would be." "The evidence presented demonstrates that he has suffered nothing but distress and anguish from the children's Mother, a woman Pressil would have never consented to having children with." (Brief for Plaintiff at 50). Plaintiff wanted the trial court to award him "damages for having to live his life with Burnette as the mother of his children." (*Id.* at 44). Remarkable. The claim fails legally for several reasons.

(1)     The damages for "having to deal with his children's Mother" are still based fundamentally on the birth of the children. He would not have to deal with her except for the boys. The theory of recovery is essentially the same as having to deal with children, wanted or not, which every parent faces. The reasoning of the courts that refuse any recovery for the birth of healthy but unwanted children applies equally to Plaintiff's claim for mental anguish damages. Plaintiff apparently believes that the fertility clinic, and the lawyers here, should have to pay him money because has a strained relationship with a former girlfriend who may or may not have been his wife. Defendants do not condone Burnette's conduct, but any problems between them should be up to them to resolve.

20

The reasoning of the courts in the cases rejecting recovery of expenses to raise unwanted children defeats Plaintiff's claim. The courts that have reached the issue have held flatly that the intangible benefits of a child to parents outweigh the parents' economic loss in rearing that healthy child. *Sutkin v. Beck, supra* at 131; *Hickman v. Myers*, 632 S.W.2d 869 (Tex. App. – Fort Worth 1982, writ ref'd n.r.e). Certainly, those intangible benefits also outweigh Plaintiff's problems with the children's Mother. These children will encourage responsible parenting. A court and jury simply cannot weigh the benefits of these children against any inconvenience or frustration that Plaintiff may have with their Mother.

In *Hickman v, Myers, supra*, the Court discussed policy issues that are applicable here. There, an unwanted child was born after a failed tubal ligation. Rejecting the parents' claim for damages, the Court pointed out that an award of damages would mean that the doctor would have to pay for the benefits to the parents in raising a healthy child. Here, Plaintiff will come into contact with the Mother because of the children. He is essentially asking Defendants to pay for him being with his children. Dealing with their Mother and raising the children are necessarily intertwined. To award damages against the lawyers because Plaintiff has to deal with the children's Mother is "to inflict a penalty on the defendant that is all out of proportion to the amount of his culpability." (*Id.* at 871).

Some courts have also expressed concern about the effect of Plaintiff's claim on the children in cases of this type. *See generally Cockrum v. Baumgartner*, 447 N.E.2d 385 (Ill. App. 1983), *cert. denied*, 464 U.S. 846 (1983)(collecting cases). These children may learn that their father did not want them and sought damages for dealing with their Mother. Plaintiff's claim could certainly have an adverse effect on these children. The legal analysis is the same whether a child is born because of a failed sterilization procedure or an *in vitro* insemination without the father's consent. Texas law does not allow a recovery of damages based on strains on the family relationship caused by a child's birth. The child deserves better.

Finally, Plaintiff argues that Burnette has made his life miserable and Defendants should have to pay for that misery. (Brief for Plaintiff at 48). But, his major complaints about her would have happened without the children, *e.g.*, a claim for domestic violence, filing false policy reports, and fraudulent use of a credit card. (C.R. 280; Brief for Plaintiff at 47). Plaintiff has judicial and personal options available to him to deal with the boys' Mother. What he cannot do it is use the boys' birth as the basis for a claim of mental anguish because he has to deal with their Mother who makes him miserable when he is involved with the boys.[7]

---

[7] Plaintiff also phrases his claim as a right to decide who will be the Mother of his children. This claim is essentially the same as the claim for damages because the Mother is making his life miserable. (Brief for Plaintiff at 48). The same analysis applies. Certainly, a parent of a child born after a failed sterilization procedure could argue that he or she should be able to decide when and under what circumstances to have children. The courts have not allowed damages sought by plaintiff in those cases and the result is the same here.

(2)    Texas law does not recognize a claim for mental anguish damages under these facts. Mental anguish damages are recoverable only in certain cases. *City of Tyler v. Likes*, 962 S.W.2d 489 (Tex. 1997). The most common case involves a claim for personal injury or wrongful death. *Fifth Club Inc. v. Ramirez*, 196 S.W.3d 788 (Tex. 2006); *Moore v. Lillebo*, 722 S.W.2d 683 (Tex. 1986). Texas law also allows a recovery for mental anguish damages for a bystander who witnesses a serious injury to a victim closely related to her and, in the classic example, when the defendant mishandles a corpse. *Freeman v. City of Pasadena*, 744 S.W.2d 923 (Tex. 1988)(bystander); *Wilson v. Ferguson*, 747 S.W.2d 499 (Tex. App. – Tyler 1988, writ denied)(mishandling of coffin). Even then, as in all cases for mental anguish, the claim must involve a relatively high degree of mental pain and distress, Disappointment, anger, resentment or embarrassment is not enough. *Parkway Co. v. Woodruff*, 901 S.W.2d 434 (Tex. 1995); *Service Corp International v. Guerra*, 348 S.W.3d 221 (Tex. 2011).

Plaintiff's claim against the fertility clinic for "having to deal with Burnette" did not fall into any of the allowable categories for recovery of mental anguish. Plaintiff suffered no injury as a result of Burnette's pregnancy or the boys' birth. Perhaps he could make an argument that he can recover mental anguish damages against his former girlfriend, which would still be doubtful, but he did not and has not sued her. Regardless, Texas law would not have allowed him to recover any

23

mental anguish damages against the fertility clinic under these facts.

(3) "Tort law does not provide a remedy for every harm." *Del Lago Partners v. Smith*, 307 S.W.3d 762, 777 (Tex. 2010); *citing* Adams, *From Babel to Reason: An Examination of the Duty Issue*, 31 McGeorge L. Rev. 25, 53 (1999).

> While it may seem that there should be a remedy for every wrong, this is an ideal limited perforce by the realities of this world. Every injury has ramifying consequences, like the rippling of the waters, without end. The problem for the law is to limit the legal consequences of wrongs to a controllable degree.

*Tobin v. Grossman*, 24 N.Y.2d 609, 249 N.E.2d 419 (1969).

Plaintiff's claim for mental anguish damages is simply far too speculative. Defendants recognize that juries often make difficult decisions about damages but no reasonable juror could balance the joy of children against Plaintiff's "mental anguish" for dealing with the boy's Mother. "But this is not a case in which the damages evade precise measurement. Here, it is impossible to rationally decide whether the plaintiff has been damaged at all. That is a mystery more properly to be left to the philosophers and the theologians." *Nelson v. Krusen*, *supra* at 925.

The courts have uniformly denied recovery in these cases for damages other than medical costs for unwanted pregnancies, expenses for unexpected injuries to the Mother during childbirth, and medical costs when a child is born with medical conditions. (*Supra* at 14-16). None of those situations is present here. *See also Crawford v. Kirk*, 929 S.W.2d at 637 (Supreme Court in *Jacobs* rejected as

speculative the parents' claim for mental anguish). Certainly, if damages for mental anguish for parents of an impaired child are too speculative, Plaintiff's claim for mental anguish because he has to deal with his children's Mother should suffer the same fate.

If Plaintiff has a problem with Burnette, he can deal with those problems either on a personal or legal level. If she commits a wrongful act against him, he can go to court for a remedy. However, he may not use any problems that he has with the Mother of his children as a basis for mental anguish damages against these lawyers.

(4)    Finally, Plaintiff's theory would expand a recovery of mental anguish damages beyond any reasonable limit. As mentioned above, "tort law does not provide a remedy for every wrong." *Del Lago Partners v. Smith*, 307 S.W.3d at 777. Plaintiff wants money because he now has to "deal with" his boys' Mother, a woman with whom he had an intimate relationship even after they broke up. Under his theory, a spouse might have a claim against his divorce lawyer based on the terms of a custody order that required too much contact with the other spouse. Or, a psychiatrist or marriage counselor could be open to suit if she advises a patient to try to spend more time with a separated spouse. Or, the parents of an unwanted child may want money because of the strain the child put on the spousal relationship. The possibilities are endless and would expand claims for mental

anguish beyond any limit set by any court in Texas.

Plaintiff's children were born alive and healthy. Many other children are not. The pregnancy and their birth were fully expected and wanted by the Mother. There were no adverse medical consequences to the Mother or the boys as a result of the pregnancy. Plaintiff would not have been able to recover any damages against the clinic in the underlying case so he cannot assert a successful claim against these lawyers for professional negligence.

## III. Plaintiff may not recover against the lawyers because the clinic and the laboratory owed him no duty.

The trial court granted summary judgment on the claims of professional negligence on two grounds. First, as discussed above, the court found that Plaintiff could not have recovered any damages against the clinic. Second, the court held that the clinic owed Plaintiff no duty as a matter of law. This Court need not reach the issue of duty because the Court can affirm the summary judgment based on the first argument on damages. *Farmer v. Ben E. Keith Co.*, 919 S.W.2d 171 (Tex. App. – Fort Worth 1996, no writ); *Carr v. Brasher*, 776 S.W.2d 567 (Tex. 1989). Even so, the lack of duty is a second and independent reason why Plaintiff may not recover against the lawyers in this case.

Plaintiff claims that he suffered mental anguish damages because the clinic failed to notify him or obtain his consent when the clinic performed the *in vitro* fertilization procedure for Burnette. (Brief for Plaintiff at 6, 23, 30); *see also* (C.R.

355)(allegations in underlying case). Thus, the simple question is whether the clinic owed Plaintiff a duty to do so. "Texas law generally imposes no duty to take action to prevent harm to others absent certain special relationships or circumstances." *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 837 (Tex. 2000). As Plaintiff admits: "There is no Texas case recognizing a duty owed by a fertility clinic to a non-patient but known sperm owner under these specific facts." (Brief for Plaintiff at 29); *see also* (R.R. 11, 12)(Plaintiff agrees that he cannot point to any authority that holds clinic had a duty). There is no authority because there is no duty.

The question whether a duty exists must be answered before the issue of standard of care even arises. *St. John v. Pope*, 901 S.W.2d 420, 424 (Tex. 1995); *Salas v. Gamboa*, 760 S.W.2d 838, 840 (Tex. App. – San Antonio 1988, no writ). Thus, Plaintiff's tirade against the clinic about what the clinic should have done is not relevant to the discussion. (Brief for Plaintiff at 6-7, 1-32). Even so, the question of duty is a matter of law; the clinic's policies and procedures do not set the legal duty or the standard of care. *Bird v. W.C.W.*, 868 S.W.2d 767 (Tex. 1994); *FFE Transportation Services v. Fulgham*, 154 S.W.3d 84 (Tex. 2004).

Plaintiff claims that if he was a patient of the clinic, then the clinic owed him a duty of care. (Brief for Plaintiff at 23). He then assumes that the clinic owed him a general duty not to injure or damage him. (*Id.* at 28). To the contrary, he "had the

burden of alleging and proving a state of facts showing he had a substantive right entitling him to maintain an action." *Johnston v. Sibley*, 558 S.W.2d 135, 137 (Tex. Civ. App. – Tyler 1977, writ ref'd n.r.e.)(rejecting claim that doctor had a general duty not to injure Plaintiff during a medical exam for workers' compensation purposes); *see also Ramirez v. Carreras*, 10 SW.3d 757, 764 (Tex. App. – Corpus Christi 2000, pet. denied)(a claim that a doctor breached a duty not to injure is not a claim that the doctor departed from an accepted standard of care).[8]

Plaintiff argues that the Family Code required the clinic to obtain Plaintiff's consent. (Brief for Plaintiff at 31), *citing* TEX. FAM. CODE §§ 160.704(a), 160.7031(b). The Family Code does no such thing; indeed, the Code suggests the opposite. Section 160.7031 provides the legal process by which an unmarried man can establish paternity when he intends to be the legal father of a child born by artificial insemination. Section 160.704(a) outlines the procedure for consent by a married woman to assisted reproduction. Neither section applies here.

Perhaps it is not surprising that Plaintiff failed to refer the Court to Section 160.702 of the Family Code which specifically provides that: "A donor is not a

---

[8] Plaintiff presumes that he was a "claimant" who could bring a "health care liability claim" against the clinic. (Brief for Plaintiff at 23); TEX. CIV. PRAC. & REM. CODE § 74.001(a)(2),(13) (statutory definitions). He relies on a receipt from the laboratory listing him as the "patient." (Brief for Plaintiff at 25; C.R. 271). Even if that designation is relevant, which is doubtful, the receipt is not from the clinic which actually performed the *in vitro* procedure but from the laboratory that froze the sample. Burnette, not Plaintiff, was the patient, and neither of them was injured by the procedure as required by the definition of "health care liability claim." Plaintiff had no derivative claim because he insists the couple was not married. *See* (*Supra* at 16). If Plaintiff was not a "claimant," the duty issue becomes even more simple.

28

parent of a child conceived by means of assisted reproduction." A donor may establish paternity through Sections 160.703 and 160.7031 which Plaintiff did not do. *See generally In re: H.C.S.*, 219 S.W.3d 33 (Tex. App. – San Antonio 2006, no pet.)(unmarried man who provided sperm for assisted reproduction who did not follow statutory procedure does not have standing to pursue a suit to establish paternity of the child). The statutes support the argument that Plaintiff had no right to insist that Burnette's procedure required notice and his consent. *See generally Annot.*, "Rights and Obligations Resulting from Human Artificial Insemination," 83 A.L.R. 4th 295. Plaintiff was not even considered a parent by law.[9]

Plaintiff's argument that the clinic owed him a duty of notice and consent also necessarily means that he could deny Burnette her wish to become pregnant or could force her to have an abortion if she became pregnant with his sperm. The argument raises significant constitutional and privacy issues about Burnette's right of control over her own body. *E.g., Planned Parenthood v. Danforth,* 428 U.S. 52 (1976)(spousal approval requirement for abortion unconstitutional because it allows a husband to wield a veto over his wife's decision); *Planned Parenthood v.*

_____

[9] Plaintiff claims that he is asserting his claims "on behalf of all single men in Texas" who may be "on the hook" to pay support for children they do not want. (Brief for Plaintiff at 19, 50). Again, the Court need not reach the issue but Section 160.702 may cast doubt on Plaintiff's duty to pay support under these specific facts because he is not considered the father by law. Regardless, Plaintiff may not recover the cost of supporting the children anyway in the same way that a father cannot recover those costs after a failed sterilization procedure. Even Plaintiff concedes that the joy he receives from his children outweighs any financial burden. (*Id.* at 50).

*Casey*, 505 U.S. 833 (1992)(Court strikes down spousal notice requirement for abortion because it unduly burdens woman's right to make decisions affecting her own body); *Washington v. Glucksberg*, 521 U.S. 702, 719-20 (1997)(listing of liberty interests in personal contexts). Texas law does not recognize a duty on the part of a doctor or a clinic to notify a donor or obtain his consent. Through its laws, the State cannot interfere with these personal and intimate family decisions. *See* (Brief for Plaintiff at 44)(discussion of privacy cases).[10]

Finally, Plaintiff argues that he could have asserted other claims against the clinic that did not require a duty. (Brief for Plaintiff at 17, 32-36). The first and more simple response is that other theories of liability were not available to him. He argued at length that he was a patient of the clinic and that he had a cause of action for medical malpractice. (Brief for Plaintiff at 23-32, 45). Such a claim is based only in negligence. *Diversicare General Partner v. Rubio*, 185 S.W.3d 842 (Tex. 2005); *Turtle Healthcare Group v. Linan*, 337 S.W.3d 865 (Tex. 2011); *see also* (C.R. 358)(cases cited in motion to dismiss); (R.R. 15)(Plaintiff agrees that he could not assert tort claims other than negligence).

Second, Plaintiff's premise is incorrect. A claim for fraud by nondisclosure still requires a duty to disclose facts. (Brief for Plaintiff at 33), *citing Horizon*

---

[10] Defendants agree with the fundamental premise that the State should not interfere with certain personal family decisions, but the cases on reproduction issues do not support the view in any way that Pressil could have forced Burnette to end a pregnancy.

*Shipbuilding v. Blyn II Holding*, 324 S.W.3d 840 (Tex. App. – Houston [14th Dist.] 2010, no pet.). A claim for conversion requires that Plaintiff have a right to immediate possession of property. *Burns v. Rochon*, 190 S.W.3d 263 (Tex. App. – Houston [1st Dist.] 2006, no pet.). As the Court pointed out in *Phillips v. Irons*, 2005 WL 4694579 (Ill. App. 2005), a case cited by Plaintiff in his Brief, Irons could not meet this element of conversion when he intended that his partner discard the sample, not return it to him. The same reasoning applies here.

Finally, the clinic could hardly have intentionally inflicted emotional distress on Plaintiff by failing to contact him or get his consent if the clinic had no duty to do so. *See Rose v. First American Title Ins. Co.*, 907 S.W.2d 639 (Tex. App. – Corpus Christi 1995, no writ); *K.B. v. N.B.*, 811 S.W.2d 634 (Tex. App. – San Antonio 1991, writ denied), *cert. denied*, 504 U.S. 918 (1992).

Burnette went to the clinic to become pregnant through an *in vitro* fertilization. She had the right to do so. Whether she had Plaintiff's permission to use his sperm is between Burnette and Plaintiff. The clinic was under no obligation to interfere with the Mother's decision or to act as a referee between Plaintiff and Burnette. Those decisions must be left to the parents of a child and not to an outside clinic.

## Conclusion

The summary judgment should be affirmed.

Respectfully submitted,

SHEEHY, WARE & PAPPAS, P.C.

By:_____

Richard A. Sheehy
State Bar No. 18178600
2500 Two Houston Center
909 Fannin Street
Houston, Texas 77010-1003
(713) 951-1000 – Telephone
(713) 951-1199 – Facsimile
Email: rsheehy@sheehyware.com

*Attorneys for Appellees*
*Jason A. Gibson, Jason A. Gibson, P.C.,*
*The Gibson Law Firm, Clifford D. Peel, II,*
*and Andrew C. Smith*

## Certificate of Compliance

Pursuant to Rule 9.4(i)(3), I certify that this Brief for Appellees, beginning with the Statement of Facts, and ending after the Conclusion, contains 7,629 words, as measured by a computer program used to prepare the brief.

_____

Richard A. Sheehy

## Certificate of Service

This will certify that a true and correct copy of this document has been forwarded to all counsel of record pursuant to the Texas Rules of Appellate Procedure on the 19th day of March 2015.

*Via E-Service and Facsimile (713) 522-7400*
Lance Christopher Kassab
David Eric Kassab
The Kassab Law Firm
1420 Alabama
Houston, Texas  77004


_____
Richard A. Sheehy

2226426