**Affirmed and Opinion filed September 10, 2015.**



**In the**

# Fourteenth Court of Appeals

## NO. 14-14-00731-CV

### JOSEPH PRESSIL, Appellant

### V.

### JASON A. GIBSON, JASON A. GIBSON, P.C. D/B/A THE GIBSON LAW FIRM, CLIFFORD D. PEEL, II, AND ANDREW C. SMITH, Appellees

**On Appeal from the 55th District Court
Harris County, Texas
Trial Court Cause No. 2013-51350A**

## O P I N I O N

In this legal malpractice case, appellant Joseph Pressil sued appellees Jason A. Gibson, Clifford D. Peel, II, Andrew C. Smith, and Jason A. Gibson, P.C. d/b/a The Gibson Law Firm (collectively, the "Gibson Parties") for negligence, gross negligence, and breach of fiduciary duty arising from the Gibson Parties' representation of Pressil in a lawsuit. The trial court granted the Gibson Parties' motion for summary judgment only as to Pressil's negligence claims and severed

Pressil's remaining claims. Pressil challenges the trial court's granting of summary judgment in three issues: (1) whether the trial court erred in granting summary judgment when the Gibson Parties did not submit expert testimony; (2) whether the trial court erred in granting summary judgment on the ground that the defendant in the underlying lawsuit did not owe Pressil a legal duty; and (3) whether the trial court erred in granting summary judgment on the ground that, even if Pressil had been represented by competent attorneys, Pressil's claims in the underlying lawsuit would have failed because Texas law does not recognize the particular damages sought by Pressil related to the birth of a healthy child. We affirm.

## Factual and Procedural Background

The material facts are not in dispute. This case stems from a lawsuit filed by the Gibson Parties on behalf of Pressil against Advanced Fertility Center of Texas and Omni-Med Laboratories, L.L.C. (collectively, the "Clinic"). In 2006, Pressil and Anetria Burnette were involved in a sexual relationship. The couple used condoms for birth control. Pressil later learned that Burnette had surreptitiously collected samples of his sperm and taken them to the Clinic. Burnette apparently told the Clinic that she was Pressil's wife and that the couple needed help conceiving a child. The Clinic successfully inseminated Burnette, and Burnette eventually gave birth to healthy twin boys. According to Pressil, other than the sexual intercourse, all of this occurred without his knowledge or consent.

Pressil hired the Gibson Parties and sued the Clinic for negligence, conversion, violations of the Texas Theft Liability Act,[1] and conspiracy (hereinafter, the "Fertility Lawsuit"). Pressil sought damages for mental anguish, loss of opportunity, loss of enjoyment of life, child support, the cost of raising two children, lost earnings, and lost earning capacity. Pressil sought exemplary

---

[1] *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 134.001–.005 (West 2011 & Supp. 2014).

damages as well. The Clinic moved to dismiss the Fertility Lawsuit on the ground that Pressil's claims were health care liability claims under chapter 74 of the Texas Civil Practice and Remedies Code, and Pressil did not timely file the requisite expert report. Pressil responded that chapter 74 did not apply because he was not a claimant and his claims were not health care liability claims. The trial court disagreed with Pressil and dismissed the Fertility Suit with prejudice. Pressil's lawyers did not appeal the dismissal.

After the Fertility Lawsuit was dismissed, Pressil sued the Gibson Parties for legal malpractice. The legal malpractice suit alleged claims for negligence, gross negligence, and breach of fiduciary duty. In his live petition, Pressil alleged the Gibson Parties committed negligence by: (1) failing to diligently represent Pressil; (2) failing to bring or preserve Pressil's claims, rights and/or defenses; (3) failing to protect Plaintiff's interests; (4) failing to comply with chapter 74 of the Texas Civil Practice and Remedies Code; and (5) failing to decline due to incompetence. In the negligence portion of his petition against the Gibson Parties, Pressil claimed that his medical malpractice claim against the Clinic would have been successful if the Gibson Parties had obtained the requisite expert report. Alternatively, assuming the Gibson Parties were correct in their assessment that the Fertility Lawsuit was not a health care liability claim governed by chapter 74, Pressil alleged that an appellate court would have reversed the dismissal and he would have been successful in a suit against the Clinic for medical negligence. Pressil sought actual damages in excess of one million dollars, exemplary damages, and damages for emotional distress.

The Gibson Parties moved for traditional summary judgment on the following grounds: (1) Pressil's claims in the Fertility Lawsuit were barred by limitations; (2) Pressil would not have been able to recover damages in the Fertility

Lawsuit; (3) Pressil impermissibly fractured negligence claims into breach of fiduciary duty claims; (4) Pressil could not prove the proximate cause element of his breach of fiduciary duty claim; (5) Pressil's allegation that the Gibson Parties violated the Texas Disciplinary Rules of Professional Conduct was not a private cause of action; and (6) Pressil did not assert any basis for recovering exemplary damages.

The trial court denied the Gibson Parties' first, third, fourth, fifth, and sixth grounds for summary judgment. The trial court explicitly granted the motion for summary judgment on two grounds. First, the trial court granted the motion as to the Gibson Parties' third ground, stating in its order that Texas law does not recognize damages for the birth of healthy children. Second, the trial court granted the motion on the ground that the Clinic did not owe Pressil a duty in tort. Accordingly, the trial court concluded that even if the Gibson Parties had acted competently, Pressil would not have been successful in the Fertility Lawsuit. In effect, the trial court determined as a matter of law that Pressil had no viable claim against the Clinic, and as a result, Pressil could not prove the causation element of his malpractice suit. After granting summary judgment on Pressil's negligence claims, the trial court severed Pressil's breach of fiduciary duty claim, rendering the summary judgment final for jurisdictional purposes. Pressil timely appealed.

In three issues, Pressil asserts that the trial court erred in granting summary judgment in favor of the Gibson Parties. Pressil first contends the trial court erred because the Gibson Parties did not present expert testimony in support of their motion for summary judgment. Next, Pressil contends the trial court erred in concluding as a matter of law that the Clinic did not owe him a duty in tort. Finally, Pressil contends the trial court erred in concluding that Texas does not recognize damages for the birth of healthy children.

4

## Standard of review

We review a trial court's granting of summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). To prevail on a traditional motion for summary judgment, the movant must show that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). When reviewing a traditional summary judgment granted in favor of the defendant, we determine whether the defendant conclusively disproved at least one element of the plaintiff's claim or conclusively proved every element of an affirmative defense. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997). A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *Farmers Ins. Exch. v. Rodriguez*, 366 S.W.3d 216, 221 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). In deciding whether a disputed material fact issue exists precluding summary judgment, we must take evidence favorable to the respondent as true, and we must indulge every reasonable inference and resolve any doubts in favor of the respondent. *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 800 (Tex. 1994). When reviewing a summary judgment granted on specific grounds, we must consider all the grounds expressly ruled on that are preserved for appellate review and necessary for final disposition of the appeal. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996). In the interest of judicial economy, we also can review other grounds for summary judgment that the trial court did not rule on but are preserved for appellate review. *Id.* A summary judgment cannot, however, be granted on a ground not presented in the motion for summary judgment. *Dubose v. Worker's Med., P.A.*, 117 S.W.3d 916, 923 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

**Analysis**

A legal malpractice action is based on negligence. *Green v. McKay*, 376 S.W.3d 891, 898 (Tex. App.—Dallas 2012, pet. denied). "To prevail on a legal malpractice claim, the plaintiff must prove the defendant owed the plaintiff a duty, the defendant breached that duty, the breach proximately caused the plaintiff's injury, and the plaintiff suffered damages." *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 112 (Tex. 2009). To establish proximate cause, a plaintiff must prove both foreseeability and cause in fact. *Ambrosio v. Carter's Shooting Ctr., Inc.*, 20 S.W.3d 262, 265 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). To establish cause in fact when the legal malpractice claim is based on the attorney's acts during prior litigation, "a plaintiff must prove that, but for the attorney's breach of duty, the plaintiff would have been successful in the prior case." *Taylor v. Alonso, Cersonsky & Garcia, P.C.*, 395 S.W.3d 178, 183 (Tex. App.—Houston [1st Dist.] 2012, no pet.). Courts often call this the "suit-within-a-suit" requirement. *Kelley & Witherspoon, LLP v. Hooper*, 401 S.W.3d 841, 847 (Tex. App.—Dallas 2013, no pet.).

The Gibson Parties attacked only the causation element of Pressil's legal malpractice suit in their motion for summary judgment. Pressil alleged in his legal malpractice petition that, but for the Gibson Parties' negligence, he would have been successful on the medical negligence claim asserted in the Fertility Lawsuit. In their summary judgment motion, the Gibson Parties did not challenge the conduct alleged to be negligent or the damages sought by Pressil in his legal malpractice suit. Rather, the Gibson Parties asserted in their motion that, as a matter of law, their allegedly negligent conduct did not proximately cause damage to Pressil because Texas law does not recognize damages for the costs and emotional suffering associated with raising an unwanted but healthy child.

6

Essentially, the Gibson Parties argued in their motion that they were entitled to judgment because Pressil could not, as a matter of law, establish the damages element of any tort claim against the Clinic.

Turning to Pressil's third issue, to prevail on the underlying negligence claim, i.e., the suit within the suit, Pressil would have had to prove that he suffered damages as a result of the Clinic's breach of the standard of care. *See Williams v. Briscoe*, 137 S.W.3d 120, 125 (Tex. App.—Houston [1st Dist.] 2004, no pet.). Whether damages or particular remedies are available to a plaintiff is a question of law. *See Wal-Mart Stores, Inc. v. McKenzie*, 997 S.W.2d 278, 280 (Tex. 1999). Accordingly, the issue here is strictly one of law: Did the trial court reach the proper legal conclusion regarding whether Pressil could have established the damages element of his claims in the Fertility Lawsuit? We conclude that it did.

Although the unique facts of the Fertility Lawsuit defy classification, the case seems to fall into the subgroup of medical malpractice claims described as wrongful pregnancy actions. In general, a wrongful pregnancy action is simply a lawsuit brought by the parents of a healthy, but unexpected, unplanned, or unwanted child against a medical provider for negligence leading to conception or pregnancy. *Flax v. McNew*, 896 S.W.2d 839, 841 n.3 (Tex. App.—Waco 1995, no writ). The claim usually arises after a negligently performed sterilization procedure. *Id.*; *see, e.g.*, *Hays v. Hall*, 488 S.W.2d 412, 413 (Tex. 1973) (vasectomy); *Santos v. Holzman*, No. 13-02-00662-CV, 2005 WL 167309, at *1 (Tex. App.—Corpus Christi Jan. 27, 2005, pet. denied) (mem. op.) (vasectomy); *Crawford v. Kirk*, 929 S.W.2d 633, 635 (Tex. App.—Texarkana 1996, writ denied) (tubal ligation); *Garwood v. Locke*, 552 S.W.2d 892, 893 (Tex. Civ. App.—San Antonio 1977, writ ref'd n.r.e.) (tubal ligation). Such claims have also been predicated on the failure to properly diagnose a pregnancy or perform an abortion;

7

negligence in the insertion or removal of an intrauterine birth-control device, or in dispensing contraception prescriptions; or the failure of a contraceptive pill or a condom. Michael A. Mogill, *Misconceptions of the Law: Providing Full Recovery for the Birth of the Unplanned Child*, 1996 Utah L. Rev. 827, 830 (1996).

In describing this lawsuit, we acknowledge that the First Court of Appeals has stated, "Texas does not recognize a cause of action for wrongful pregnancy." *Zapata v. Rosenfeld*, 811 S.W.2d 182, 184 (Tex. App.—Houston [1st Dist.] 1991, writ denied). In our view, however, "wrongful pregnancy" generally is "merely a descriptive label for a form of [medical] malpractice," and Texas has long allowed recovery for negligence by medical practitioners. *Flax*, 896 S.W.2d at 843; *see also* Mogill, *supra*, at 828 ("While an action for wrongful pregnancy consists of the parents' claim for damages due to the birth of a healthy, unplanned child because of another's fault, it is generally viewed as a traditional case of medical malpractice."). Therefore, we agree that Texas does not recognize a unique cause of action called "wrongful pregnancy"; rather, Texas recognizes the medical malpractice claims many courts describe as "wrongful pregnancy" or "wrongful conception" actions. *See Flax*, 896 S.W.2d at 841 n.3 ("wrongful pregnancy" is sometimes called "wrongful conception"). The Fertility Lawsuit is just such a claim: Pressil alleged that the Clinic's alleged negligence—failing to investigate and obtain consent from the unwitting sperm donor, Pressil—resulted in the unexpected (at least by Pressil) birth of healthy twin boys.[2] *See Crawford*, 929 S.W.2d at 635 n.1 ("The case here seems to fall into the 'wrongful pregnancy' category, though 'unplanned,' 'unanticipated,' or 'undesired pregnancy' may be a more apt description of the factual circumstances shown by the record.").

---

[2] We do not opine on whether, under Texas law, Pressil would be considered the children's father. *See* Tex. Fam. Code Ann. §§ 160.102(6) (defining donor), 160.702 (donor is not a parent of child conceived by means of assisted reproduction) (West 2014).

The key issue in this case is not how we should label the cause of action but rather what types of damages are available to a plaintiff who asserts such a claim. As an initial matter, in Texas, a plaintiff cannot recover damages related to the support and maintenance of a healthy child born as a result of the medical provider's negligence. *Id.* at 637; *Flax*, 896 S.W.2d at 841–42; *Terrell v. Garcia*, 496 S.W.2d 124, 128 (Tex. Civ. App.—San Antonio 1973, writ ref'd n.r.e.), *cert. denied*, 415 U.S. 927 (1974). This is because the intangible benefits of parenthood far outweigh the monetary burdens involved. *Hickman v. Myers*, 632 S.W.2d 869, 870 (Tex. App.—Fort Worth 1982, writ ref'd n.r.e.); *Terrell*, 496 S.W.2d at 128.

There is disagreement among Texas courts, however, as to what damages a plaintiff *can* recover. In *Flax*, the plaintiff sued her doctor for medical negligence resulting from a failed sterilization procedure. 896 S.W.2d at 840. The plaintiff alleged that during her pregnancy and after childbirth she suffered from swelling, nausea, fatigue, bladder-control problems, personality changes, scarring, physical impairment, physical and mental pain and suffering, and detrimental effects to her relationship with her husband. *Id.* at 841. The *Flax* court adopted a "limited-damages rule," which would potentially allow the plaintiff to recover the following damages: (1) expenses for the failed procedure and any corrective procedures; (2) prenatal and postnatal expenses; (3) pain and suffering during pregnancy and delivery; (4) loss of consortium; (5) emotional distress; (6) lost wages; (7) pain and suffering associated with the corrective procedure; and (8) any permanent impairment suffered by the parents as a result of the pregnancy, the delivery, or the corrective procedure. *Id.* at 843, 845.

In *Crawford*, on the other hand, the Texarkana Court of Appeals further limited the plaintiff's recovery to the actual medical expenses incurred as a result of the failed sterilization procedure. 929 S.W.2d at 637. In that case, a failed tubal

ligation resulted in the birth of healthy twin girls. *Id.* at 635. The plaintiff-mother sued her doctor and sought damages for all medical expenses associated with the pregnancy, physical and mental pain and suffering, and the costs of raising the twins. *Id.* The court of appeals reviewed extant case law and rejected the *Flax* court's limited-damages rule. *Id.* at 637. Citing *Jacobs v. Theimer*, 519 S.W.2d 846, 849–50 (Tex. 1975), the *Crawford* court reasoned that if the parents of an impaired child could not recover mental anguish damages, then the parents of a healthy child could not recover mental anguish damages. 929 S.W.2d at 637. The *Crawford* court further reasoned that the San Antonio Court of Appeals' holding in *Garwood* only approved recovery of the medical expenses in a suit brought by the parents of a healthy child. 929 S.W.2d at 637. The *Crawford* court concluded that *Flax*'s expansion of the types of damages in a wrongful pregnancy suit contradicted existing Texas authority. 929 S.W.2d at 637.

We agree with the *Crawford* court and reject *Flax's* expansion of the types of damages available in a so-called wrongful pregnancy action. We conclude that the measure of damages available to plaintiffs in wrongful pregnancy cases is limited to the medical expenses associated with the failed procedure that produced the healthy but unwanted child. *See Crawford*, 929 S.W.2d at 637.

None of the damages sought by Pressil in the Fertility Lawsuit is recoverable under Texas law. Pressil did not request damages for the medical expenses associated with any medical procedure. Nor could he have; no medical procedure was performed on him. Moreover, the medical procedure performed on Burnette was apparently a rousing success, resulting in the birth of healthy twin boys. The only damages Pressil sought in the Fertility Lawsuit were costs generally associated with the support and maintenance of children, such as mental anguish, loss of opportunity, loss of enjoyment of life, child support, the cost of raising two

10

children, lost earnings, and lost earning capacity. Under prevailing Texas law, none of these damages was recoverable. Therefore, the trial court properly granted the Gibson Parties' motion for summary judgment on the ground that the claims in the Fertility Lawsuit would have failed as a matter of law because there were no damages even if Pressil had been represented by a reasonably competent lawyer. We overrule Pressil's third issue.[3]

Because the trial court properly concluded that Pressil's claims in the Fertility Lawsuit would have failed as a matter of Texas law, we need not consider the bulk of Pressil's second issue—whether the trial court erred in concluding that the Clinic did not owe Pressil a legal duty. *See* Tex. R. App. P. 47.1. However, in connection with his second issue, Pressil contends that even if the Clinic had no duty under a negligence theory, he would have prevailed in the Fertility Lawsuit on the following alternative theories: (1) conversion, (2) fraud by nondisclosure, and (3) intentional infliction of emotional distress.[4] Regardless of what tort theory competent counsel would have assigned to Pressil's alleged claims, and regardless of whether the underlying dismissal of Pressil's claims as health care liability claims was proper, at its core the Fertility Lawsuit remained a "wrongful pregnancy"-related tort action. That is, the nature of Pressil's alleged injuries from the Clinic's allegedly tortious conduct in inseminating Burnette using Pressil's sperm without his knowledge or consent remained the same—mental anguish and economic harm in connection with the birth of healthy twin boys. *See Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 617–18 (Tex. 1986). As such, Pressil was limited to damages recoverable within that context—namely, medical

---

[3] Although we analogize Pressil's claim in the Fertility Lawsuit to a wrongful pregnancy action, we limit our holding to the unique facts of this case.

[4] Pressil's claim that he would have prevailed on a claim of intentional infliction of emotional distress was not raised in the Fertility Lawsuit, in Pressil's response to the Gibson Parties' motion for summary judgment, or in Pressil's post-summary judgment letter brief.

expenses relating to the wrongful procedure that produced the healthy but unwanted children. *See Crawford*, 929 S.W.2d at 637. Therefore, under these circumstances, none of Pressil's alleged conversion, fraud by nondisclosure, or IIED damages was recoverable as a matter of law. Accordingly, the trial court's granting of summary judgment on the damages ground also was proper with regard to these alternative theories. *See Coterill–Jenkins v. Tex. Med. Ass'n Health Care Liability Claim Trust*, 383 S.W.3d 581, 592 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (summary judgment appropriate where ground asserted in motion conclusively negates common element or is broad enough to encompass additional claims). We overrule this subissue. We now consider Pressil's first issue.

In his first issue, Pressil contends that the trial court erred in granting summary judgment because the Gibson Parties did not present expert testimony on the issue of proximate cause. Expert testimony is required in legal malpractice cases when the causal link between the attorney's negligence and the client's harm is beyond the trier of fact's common understanding. *See Cooper v. Harris*, 329 S.W.3d 898, 901–02 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). An expert cannot, however, testify on pure questions of law. *Greenberg Traurig of N.Y., P.C. v. Moody*, 161 S.W.3d 56, 94 (Tex. App.—Houston [14th Dist.] 2004, no pet.). As previously stated, the availability of damages or remedies in a particular case is a question of law. *See McKenzie*, 997 S.W.2d at 280. Consequently, any expert testimony on whether Texas law would afford Pressil a remedy in the Fertility Lawsuit would have been inadmissible. *See* Tex. R. Evid. 704; *see, e.g., Dickerson v. DeBarbieris*, 964 S.W.2d 680, 690 (Tex. App.—Houston [14th Dist.] 1998, no pet.) (trial court properly excluded expert testimony interpreting legal effect of a document authorizing a condominium association to

conduct a nonjudicial foreclosure). We therefore reject Pressil's argument and overrule his first issue.

## Conclusion

The trial court properly granted summary judgment in favor of the Gibson Parties. Even if he had been represented by competent counsel, Pressil would not have been successful in the Fertility Lawsuit because the types of damages sought by Pressil in the Fertility Lawsuit are not available under Texas law. We need not consider Pressil's second issue concerning the Clinic's legal duty. Because the question of whether Pressil could recover damages in the Fertility Lawsuit was purely one of law, the Gibson Parties were not required to present an expert witness to establish their right to summary judgment. Accordingly, we affirm the trial court's judgment.


/s/    Marc W. Brown
        Justice


Panel consists of Justices Christopher, Brown, and Wise.

13