PHYLLIS DIANE SZEKERES; PETER F. SZEKERES; ERICA SZEKERES, APRIL SZEKERES, SHELLEY SZEKERES AND ROBIN SZEKERES, MINORS BY AND THROUGH THEIR GUARDIAN AD LITEM PHYLLIS DIANE SZEKERES, APPELLANTS, v. WILLIAM ROBINSON, M.D. AND PATRICK FLANNAGAN, M.D., AND WOMEN'S HOSPITAL, RESPONDENTS.

No. 15115

March 18, 1986                                    715 P.2d 1076

---

94

*Dominic P. Gentile,* Las Vegas, for Appellants.

*Keefer, O'Reilly & Haight* and *Mark E. Ferrario,* Las Vegas; *Beckley, Singleton, DeLanoy & Jemison* and *Daniel F. Polsenberg,* Las Vegas, for Respondents.

**OPINION**

By the Court, Springer, J.:

This case arises out of a claimed failure of surgical sterilization procedures and the delivery by Phyllis Szekeres of a normal baby girl, Erica. Phyllis sues on her own behalf and on behalf of Erica and Erica's brothers and sisters claiming that all have been "damaged" by the birth of Erica. The father of Erica, Peter

Szekeres, joins the suit and asks for damages caused by his wife's unavailability during pregnancy. The Szekereses sue, in both contract and tort, the attending physicians and the hospital where the surgery was performed. The district court dismissed all claims, and this appeal ensued.

The district court's orders of dismissal of all tort claims are affirmed on the ground that one of the essential elements of a negligent tort, namely compensable damages, is not present in this case. The case is remanded, however, to permit Phyllis and Peter Szekeres to pursue a breach of contract claim relative to the outcome of the surgery.

## TORT LIABILITY

It has been said that "a really satisfactory definition of a tort has yet to be found;" still, the definition is offered that "[b]roadly speaking, a tort is a civil wrong, other than breach of contract, for which the court will provide a remedy in form of an action for damages." *Prosser and Keeton on the Law of Torts* p. 2, West Publishing Co., (5th ed. 1984). Tort law is overwhelmingly common law, court-made law, developed in case-by-case decision making by the courts. Today this court decides that in Nevada the birth of a normal child is not a civil wrong for which the court will provide a remedy in the form of an action for damages. Even if negligent or careless conduct were found to have contributed to the eventual birth of Erica, this event would not give rise to tort liability in negligence. The reason is that a negligence action may not be maintained unless one has suffered injury or damage, Cannon v. Sears, Roebuck & Co., 374 N.E.2d 582 (1978), and the birth of a normal, healthy child is not "legally compensable damages" in tort. Restatement (Second) of Torts, § 328A (1965).[1] *See* Byrd v. Wesley Medial Center, 699 P.2d 459, 468 (Kan. 1985) ("We hold simply that under the public policy of this state a parent cannot be said to be damaged by the birth of a normal, healthy child, and the parent may not recover because of the birth of such a child.")

---

[1]Restatement (Second) of Torts, § 328A (1965) provides:
§ 328A.  Burden of Proof
In an action for negligence the plaintiff has the burden of proving
(a) facts which give rise to a legal duty on the part of the defendant to conform to the standard of conduct established by law for the protection of the plaintiff,
(b) failure of the defendant to conform to the standard of conduct,
(c) that such failure is a legal cause of the harm suffered by the plaintiff, and
(d) that the plaintiff has in fact suffered harm of a kind legally compensable by damages.

This is a case of first impression in Nevada. Courts in other jurisdictions have resolved the issue in a variety of ways. Some have found tort liability present yet have limited damages to those resulting from the pregnancy and birth while excluding recovery for the cost of rearing the child. *See, e.g.,* Wilbur v. Kerr, 628 S.W.2d 568 (Ark. 1982). Other jurisdictions have permitted full tort recovery including economic, physical and emotional costs attendant to the birth and rearing of the child. *See, e.g.,* Custodio v. Bauer, 251 Cal.App.2d 303, 325, 59 Cal.Rptr. 463, 477 (1967). While a third view is taken by other jurisdictions which permit recovery but set up complicated computation of damages formulas whereby the trier of fact must set off what the child costs against what the child is worth, a system which seems to us as a mercenary approach employing questionable accounting practices. *See, e.g.,* Troppi v. Scarf, 187 N.W.2d 511, 519 (Mich.App. 1971).

The cases allowing tort recovery have the underlying assumption that the issues involved are indistinguishable from any other professional negligence case, saying, for example, that

> [a]nalytically, such an action is indistinguishable from an ordinary medical negligence action where a plaintiff alleges that a physician has breached a duty of care owed to him [or her] with resulting injurious consequences. Where the purpose of the physician's actions is to prevent conception or birth, elementary justice requires that he [or she] be held legally responsible for the consequences which have in fact occurred.

Sherlock v. Stillwater Clinic, 260 N.W.2d 169, 174 (Minn. 1977) (citing W. Prosser, *Torts* §§ 41, 42 (4th Ed. 1971)).

From our point of view what is overlooked in these decisions is the basic question of just what is the damage or the *"wrong"* to be legally redressed.[2] A case involving the birth of a normal child is analytically distinguishable from an ordinary medical negligence action with its attendant "resulting injurious consequences," such as death, disability or other adverse iatrogenic consequences; and it should not be facilely assumed that child-

---

[2]The word "tort" derives from the past participle, *tortus,* of the Latin verb *torquere,* meaning to bend or twist. What is twisted or not straight became in French *tort,* a general synonym for "wrong." What is wrong or right, of course, is a matter of moral judgment. The jurisprudence of England from which we derive our own common law was greatly influenced by the legal philosophies of continental Europe, and accordingly the common law evolution of negligence. The common law evolution of negligence very much evolved from ideas of morality taken from these philosophies. What was proper morally should be proper legally; hence, a system developed which was based on *wrongs* which resulted from the *fault* of another. This idea is still properly part of our jurisprudence.

birth is a "wrong" or the type of injurious consequences for which society *should,* through its courts, as a matter of public policy, give reparation.

Many courts have taken for granted that normal birth is an injurious and damaging consequence and have disagreed only the "how-much" part of such claims. We do not take the wrongness nor the injuriousness of the birth event for granted and say, to the contrary, that normal birth is not a wrong, it is a "right." It is an event which, of itself, is not a legally compensable injurious consequence even if the birth is partially attributable to the negligent conduct of someone purporting to be able to prevent the eventuality of childbirth.[3]

It has been argued by at least one text writer that Roe v. Wade, 410 U.S. 113 (1973), in which the United States Supreme Court recognized a constitutionally protected right of a parent to decide on a first trimester abortion, "should constitute a forceful argument against any decision denying recovery for wrongful birth based on public policy." Dooley, *Modern Tort Law,* Callaghan and Company (1982 Revision). We fail to see any forceful argument contrary to this opinion which emanates from *Roe v. Wade.* It has also been argued that "all decisions since *Roe v. Wade* that deny recognition of the action [for birth of a normal child] are ignoring the Supreme Court rulings regarding the individual's right not to have children." Holt, *Wrongful Pregnancy,* 33 S.C.L. Rev. 759, 793 (1982). Even if we were to assume that our Founding Fathers intended that our Constitution embrace a "right not to have children," as suggested by some writers, we must ask what the consequences of the existence of such a right would be in the present context. Our refusal to recognize the birth of a normal, healthy child as a compensable wrong does not in anyway interfere with a person's ostensible right to avoid conception or, *per Roe v. Wade,* to abort a fetus in the first trimester. Tort liability is part of a body of law which is directed toward the compensation of individuals for wrongs suffered within the scope of their legally recognized interests and where the law considers that compensation to be properly (and morally) required. "Tort obligations are in general obligations imposed by law on policy considerations to avoid some kind of loss to others." Prosser and Keeton, above, at 656. Our decision to disallow tort actions for

[3]Although there is nothing in this opinion to imply otherwise, we take the trouble to declare that this decision has nothing to do with ordinary medical malpractice cases in which medical negligence results in birth injuries, genetic deformities and the like. We deal here only with the rather narrow situation in which professional negligence is claimed to be the cause of the birth of a healthy, although unwanted child.

the birth of a normal child, sometimes called "wrongful birth" actions, does not interfere with anyone's right to have children or not to have children; it simply holds that one cannot recover in tort for such an event because the constituent element of a negligence tort, namely damages, is not present here.

## CONTRACT LIABILITY

The denial of tort liability does not mean that there is no remedy in a case such as this. As stated above, if a physician or someone else is found to have contracted to prevent a pregnancy from occurring, certainly it was within the contemplation of the contracting parties that failure to carry out the process in the manner promised would result in an award, at least, of the costs of medical, surgical and hospital care associated with the failed surgery. In such a case damages could be awarded in accordance with what was contemplated by the parties at the time the contract was made. Hadley v. Baxendale, 9 Ex. 341, 156 Eng. Rep. 145 (1854). We hold here only that the birth of Erica, of itself, is not the basis for a tort action in negligence and remand it to the district court for consideration of the contract aspect of the Szekeres claims.

The judgment dismissing all claims is reversed, and the cause is remanded to the district court to consider the case in a manner consistent with this opinion.

MOWBRAY, C. J., GUNDERSON, and STEFFEN, JJ., and Foley, D. J.[4] concur.

---

[4]The Honorable Richard Bryan, Governor, designated the Honorable Thomas A. Foley, District Judge of the Eighth Judicial District, to participate in this case. Nev. Const., art. 6, § 4.