Sarah Paldo FLAX, Appellant,

v.

Dr. J.T.L. McNEW and Humana of Texas, Inc., d/b/a Humana Day Surgery–Bryan, Appellees.

No. 10–94–209–CV.

Court of Appeals of Texas, Waco.

April 12, 1995.

John Alan Goren, Dallas, Sabrina E. Moss, Sabrina E. Moss & Associates, P.C., Irving, for appellant.

J. Preston Wrotenbery & Kevin D. Jewell, Hirsch, Robinson, Sheiness & Glover, P.C., Michael Connelly, Solace H. Kirkland & Laura J. Ware, Major, Day, Caldwell & Keeton, L.L.P., Houston, for appellees.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

VANCE, Justice.

■ We must decide what types of damages, if any, are recoverable when a "wrongful pregnancy" results from medical negligence in performing a sterilization procedure. Texas courts recognize a claim for "wrongful birth" when a child with birth defects is born as a result of medical negligence; they do not, however, allow parents to recover the financial expenses for education and maintenance that result from the birth of a normal, healthy child. *Compare Jacobs v. Theimer*, 519 S.W.2d 846 (Tex. 1975), *with Terrell v. Garcia*, 496 S.W.2d 124 (Tex.Civ.App.—San Antonio 1973, writ ref'd n.r.e.), *cert. denied*, 415 U.S. 927, 94 S.Ct. 1434, 39 L.Ed.2d 484 (1974). Deciding that other damages are available when negligence in the performance of a sterilization procedure results in the birth of a normal child, we will follow the "limited recovery" rule that has been followed in Texas and that prevails in a majority of jurisdictions.

## FACTS

Sandra Flax ("Flax") decided against having additional children. She consulted with Dr. J.T.L. McNew ("McNew"), who performed a sterilization procedure in 1990 at

Humana Day Surgery—Bryan ("Galen").[1] Less than six months later, she was pregnant; a normal child was born on November 11, 1991.

Flax alleged that at various times during her pregnancy and after childbirth she suffered from (1) swelling of her lower extremities, abdomen, and face; (2) nausea; (3) fatigue; (4) inability to control her bladder; and (5) severe personality changes. She also alleged that she has permanent scars, she was physically impaired during and immediately after the pregnancy, she experienced physical and mental pain and suffering, and her relationship with her husband was affected. She alleged approximately $1,500 in medical expenses.

■ Galen and McNew (collectively, the "Defendants") filed separate motions for summary judgment, in which they asserted that, because the child had been born normally and was healthy, no cause of action had been asserted that would allow Flax to recover any of her damages. All parties filed their summary judgment proof, and the court granted a take-nothing summary judgment in favor of the Defendants. The judgment states:

> The Court finds that the Plaintiff, Sarah Paldo Flax, has in substance alleged a cause of action for wrongful conception or for wrongful pregnancy resulting in the birth of a healthy child, and that Texas does not recognize such a cause of action. This finding is the sole basis for the granting [of] the Defendants' motions.

After her motion for new trial was overruled, Flax appealed.[2]

## STANDARD OF REVIEW

■ We will follow the well-established standard in reviewing the summary judgment. *See Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985). The movants had the burden of showing that no genuine issue of material fact exists and that they are entitled to the summary judgment as a matter of law. *See id.* We must accept all evidence favorable to Flax as true. *See id.* We must indulge every reasonable inference and resolve all doubts in her favor. *See id.* at 549. Thus, we must assume that the allegations of Flax' petition are true. *See id.*

## THE CONTENTIONS

■ We will use the term "wrongful pregnancy" to described Flax' suit for damages that she alleges she suffered as a result of the unexpected pregnancy.[3]

■ All parties recognize that damages are recoverable when medical negligence results in the birth of a physically-impaired child. *See Jacobs*, 519 S.W.2d at 850. They

---

1. The appellee is Galen Hospitals of Texas, Inc., the successor-in-interest to Humana of Texas, Inc., which then operated Humana Day Surgery—Bryan.

2. The Defendants' briefs assert in cross-points that the record also establishes as a matter of law that McNew was not negligent. Because the court stated the reason for granting the summary judgment in its order, we cannot consider these arguments. *See State Farm Fire & Casualty Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex.1993) (plurality opinion). Also, before the court may grant a "no cause of action" summary judgment, it must give the parties adequate opportunity to plead a viable cause of action. *Pietila v. Crites*, 851 S.W.2d 185, 186 n. 2 (Tex.1993). Summary judgment is proper when facts alleged by plaintiff establish the absence of a right of action or an insuperable barrier to a right of recovery. *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex.1972). Flax waived any objection by failing to complain in the trial court or on appeal that the summary judgment motion improperly raised an attack on her pleadings.

*See San Jacinto River Authority v. Duke*, 783 S.W.2d 209, 210 (Tex.1990).

3. The generally accepted terminology, although used somewhat inconsistently, is: "wrongful pregnancy" refers to an action brought by parents of a healthy, but unexpected, unplanned, unwanted child for negligence leading to conception or pregnancy (usually following a negligently performed sterilization procedure); "wrongful birth" is an action brought by parents on behalf of themselves for negligence leading to birth of an abnormal child, for instance, following negligently administered or omitted fetal testing; and "wrongful life" is an action brought by or on behalf of a child with such an impairment for negligence leading to his or her impaired life. Gregory G. Sarno, Annotation, *Recoverability of Compensatory Damages for Mental Anguish or Emotional Distress for Tortiously Causing Another's Birth*, 74 A.L.R.4th 798 § 2 (1989); *see also Smith v. Gore*, 728 S.W.2d 738, 741 (Tenn.1987). "Wrongful pregnancy" is sometimes called "wrongful conception." *Id.*

further recognize that damages related to the education and maintenance of a normal, healthy child are not recoverable. *See Terrell,* 496 S.W.2d at 128; *see also Hickman v. Myers,* 632 S.W.2d 869, 872 (Tex.App.—Fort Worth 1982, writ ref'd n.r.e.) (rejecting a "benefit" rule that would weigh expenses of rearing a child against "value" of the tangible and intangible benefits of the child to the parents); *Sutkin v. Beck,* 629 S.W.2d 131 (Tex.App.—Dallas 1982, writ ref'd n.r.e.) (grant of special exception sustained after plaintiff declined to amend).

Flax relies on *Garwood v. Locke* to establish that other damages are recoverable. *See Garwood v. Locke,* 552 S.W.2d 892 (Tex.Civ. App.—San Antonio 1977, writ ref'd n.r.e.). She says that, although the San Antonio court did not use the term "wrongful pregnancy," the holding necessarily recognized such a claim. Garwood underwent a tubal ligation, became pregnant three months later, and gave birth to a normal child. She then had a hysterectomy and was later treated by a clinical psychologist and a psychiatrist. She sued for medical expenses, lost earnings, physical pain, and mental anguish. The court reversed the trial court's summary judgment, saying that *Terrell* did not foreclose the existence of a cause of action for negligence in the sterilization procedure, only certain damages arising from the negligence, *i.e.,* the economic loss of rearing and educating a normal child. *Id.* at 895.

Admitting that *Garwood* "ultimately held that the mother had stated a cause of action for medical expenses incurred in relation to the pregnancy," the Defendants say the decision stands alone because all other Texas courts that have considered the issue have followed *Terrell,* not *Garwood.* They conclude, "Essentially, *Garwood* today stands as an anomaly, rather than a landmark, in Texas jurisprudence." They also assert that, in any event, *Garwood* would limit Flax' recoverable damages to "medical expenses." *See id.*

Defendants point to *Silva v. Howe,* 608 S.W.2d 840 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.), a case brought by parents on behalf of themselves and their son, in which the plaintiffs alleged negligence in the performance of a husband's vasectomy resulting in the birth of a normal child. In *Silva,* the court found that limitations began when the parents received a positive pregnancy test and that, because more than two years elapsed before suit was filed, their claims were barred. *Id.* at 842. Flax recognizes that the claims of damages for educating and maintaining the child were denied on the basis of *Terrell* and admits that the *Silva* opinion does not disclose the type of damages sought by the parents on their own behalf. She points, however, to the court's statement that the "crux of the appeal" was a statute-of-limitations question and argues that the case was decided only on that basis. *See id.* (citing *Hays v. Hall,* 477 S.W.2d 402 (Tex. Civ.App.—Eastland), *rev'd on other grounds,* 488 S.W.2d 412 (Tex.1972)).

Defendants also cite *Zapata v. Rosenfeld,* in which the First Court of Appeals stated, "Texas does not recognize a cause of action for wrongful pregnancy." *See Zapata v. Rosenfeld,* 811 S.W.2d 182, 184 (Tex.App.— Houston [1st Dist.] 1991, writ denied). Flax points out that the court's statement is "gratuitous" and that the cases cited in support of the statement—*Sutkin* and *Silva*—do not support it, *i.e.,* that the former was a suit seeking damages for education and maintenance of a healthy child and the latter turned on a limitations question. *See id.* (citing *Sutkin,* 629 S.W.2d at 132, and *Silva,* 608 S.W.2d at 842).

Recognizing that Flax' suit was brought to recover types of damages rarely discussed in prior Texas decisions, the Defendants nevertheless argue that, taken together, those decisions demonstrate that Texas does not recognize any form of medical liability for damages arising from an unwanted pregnancy that results in the birth of a normal, healthy child. They argue that public policy should dictate that "no damages resulted from the birth of a normal child through normal delivery with no permanent harm to the mother on the grounds that the birth of a normal child could not be considered an injury to the parents...." *See Terrell,* 496 S.W.2d at 125; *see also Hickman,* 632 S.W.2d at 870 ("Public policy deems the birth of a healthy child a precious gift, rather than a compensable

wrong.") They further say that only the Supreme Court or the legislature should adopt such a rule.

In summary, Flax contends that the limited-damages rule has already been adopted in Texas and in a majority of other jurisdictions, arguing that a "no-recovery" rule would allow tortious conduct by a medical practitioner to go totally uncompensated whereas a "limited damages" rule would compensate the parents for expenses that flow from the negligent act.[4] Defendants say that Texas does not and should not recognize a cause of action for wrongful pregnancy or wrongful conception.

## THE AUTHORITIES

In our view, the question is not whether Texas will recognize a new cause of action for "wrongful pregnancy" or "wrongful conception." Texas has long allowed recovery for negligence by medical practitioners. Wrongful pregnancy is "merely a descriptive label for a form of malpractice." *Girdley v. Coats,* 825 S.W.2d 295, 296 (Mo.1992) (citing *Miller v. Duhart,* 637 S.W.2d 183 (Mo.App.1982)).

In *Girdley,* the Missouri Supreme Court notes that the courts of most states have not rejected claims of wrongful pregnancy in their entirety but have adopted different damage rules. *Id.* The variations include: (1) a no-recovery rule; (2) a full-recovery rule; (3) a limited-damages rule; and (4) a benefits rule. *Id.* The "limited damages" rule has been adopted by an overwhelming majority of the jurisdictions that have considered the matter.[5] *Id.* Under this rule, the damages are "limited" because the expenses of raising and educating the child are denied as elements of recovery. *Id.* *Girdley* further examines the rationales that different courts have used in adopting the

limited-damages rule—"most being variations on themes of public policy." *Id.* at 297.

We need not examine the full-recovery rule, because it has effectively been rejected in Texas. *See Terrell,* 496 S.W.2d at 128. The benefits rule—allowing recovery of the expenses of education and maintenance mitigated by the value of the child's aid, comfort, and society during the parent's life expectancy—has likewise been rejected in Texas. *See Hickman,* 632 S.W.2d at 872. It has been criticized on grounds that it requires "complicated computation of damages formulas whereby the trier of fact must set off what the child costs against what the child is worth, a system which seems to us as a mercenary approach employing questionable accounting practices." *Szekeres v. Robinson,* 102 Nev. 93, 715 P.2d 1076, 1077 (1986).

The question that confronts us is whether Texas should allow recovery of limited damages or follow a no-recovery rule.

### LIMITED DAMAGES

In adopting the limited-damages rule, the Missouri court listed possible elements of damage: (1) prenatal and postnatal medical expenses; (2) the mother's pain and suffering during the pregnancy and delivery; (3) loss of consortium; (4) the cost of a second corrective sterilization procedure; (5) emotional distress; (6) lost wages; (7) pain and suffering associated with the corrective procedure; and (8) any permanent impairment suffered by the parents as a result of the pregnancy, the delivery, or the corrective procedure. *Girdley,* 825 S.W.2d at 298–99.

Prior to the Missouri decision, the Supreme Court of Tennessee had surveyed the authorities on the various damages allowed and had held that a mother who gave birth to a healthy child after a failed tubal ligation

---

**4.** Flax cites, among others, *White v. United States,* 510 F.Supp. 146 (D.Kan.1981); *Girdley v. Coats,* 825 S.W.2d 295 (Mo.1992); *Johnson v. University Hospitals,* 44 Ohio St.3d 49, 540 N.E.2d 1370 (1989); *Goforth v. Porter Med. Assoc., Inc.,* 755 P.2d 678 (Okla.1988); *Smith v. Gore,* 728 S.W.2d 738 (Tenn.1987); *Harbeson v. Parke–Davis, Inc.,* 98 Wash.2d 460, 656 P.2d 483 (1983); *Beardsley v. Wierdsma,* 650 P.2d 288 (Wyo.1982); *Jackson v. Bumgardner,* 318 N.C. 172, 347 S.E.2d 743 (1986); *Public Health Trust v. Brown,* 388 So.2d 1084 (Fla.App.1980); *Wilc-*

*zynski v. Goodman,* 73 Ill.App.3d 51, 29 Ill.Dec. 216, 391 N.E.2d 479 (1979).

**5.** As of 1992, according to *Girdley,* more than twenty-five states had adopted the limited-damages rule and six jurisdictions used the benefits rule. *Girdley v. Coats,* 825 S.W.2d 295, 296 n. 2, 298 n. 3 (Mo.1992). Interestingly, Texas is listed among the states having adopted the limited-damages rule. *Id.* at 297 n. 2 (citing *Terrell v. Garcia* ).

could recover (1) all medical expenses, both for the unsuccessful procedure and the pregnancy and delivery; (2) pain and suffering from the time she discovered that she was pregnant until she recovered from childbirth; (3) lost wages during pregnancy, delivery, and a postnatal period; and (4) possible lost consortium. *Smith v. Gore*, 728 S.W.2d 738, 751 (Tenn.1987).

The Supreme Court of Wyoming considered the claims of eighteen appellants who had undergone unsuccessful tubal ligations—eleven had given birth to normal children, three were still pregnant at the time of decision, and four had terminated the unwanted pregnancy. *Beardsley v. Wierdsma*, 650 P.2d 288, 289 (Wyo.1982). In adopting the limited-damages rule, the Court stated:

> Consistent with the majority of recent cases, we hold that parents who find themselves in the situation that appellants do here are entitled to recover some items of damages, provided they are able to prove negligence, causation, and damages. Our problem is in determining what items of damages are proper. A ruling denying any damages to appellants would render the medical profession immune from liability for negligent treatment of patients seeking to limit the size of their families.

*Id.* at 292. Rejecting arguments that claims for damages or expenses after the birth of a normal child are too speculative, too remote from the negligence, out of proportion to the culpability of the negligent doctor, opening the door to fraudulent claims and claims with no sensible stopping point, the Court held that damages would be allowed for (1) medical expenses associated with the unsuccessful sterilization procedure; (2) medical and hospital expenses for the birth of the unplanned child; (3) the woman's lost wages because of the pregnancy or from a procedure to terminate the pregnancy; (4) pain and suffering connected to the pregnancy; and (5) for those who elect to have an abortion, the cost of that procedure and any pain and suffering associated with it. *Id.; see also McKernan v. Aasheim*, 102 Wash.2d 411, 687 P.2d 850, 856 (1984) (medical expenses, pain and suffering, and lost consortium associated with a failed tubal ligation, pregnancy, and child-

birth); *Mason v. Western Pennsylvania Hosp.*, 499 Pa. 484, 453 A.2d 974, 976 (1982) (all medical expenses and lost wages related to prenatal care, delivery, and postnatal care, and pain and suffering during the prenatal through postnatal periods). The court recognized that the area of family planning had been "clothed with constitutional protection." *Beardsley*, 650 P.2d at 289 (citing *Kingsbury v. Smith*, 122 N.H. 237, 442 A.2d 1003, 1005 (1982)).

Turning back to Texas, we find the San Antonio court's decision in *Garwood* most directly addresses the types of damages that Flax alleges. *See Garwood*, 552 S.W.2d 892. Garwood sued for (1) medical expenses incurred; (2) loss of earnings; and (3) physical pain and mental anguish past and future, after she gave birth to a normal, healthy child following an unsuccessful sterilization operation. *Id.* at 893. The trial court granted a summary judgment in favor of the doctors. Garwood's summary-judgment affidavit stated that she had mental and emotional problems during the pregnancy, "cried a great deal" during the pregnancy and thereafter, and worried that the child would be mentally retarded. The affidavit also stated that she was treated by a clinical psychologist and a psychiatrist for about a year and a half. Reviewing its earlier decision in *Terrell*, the court observed:

> [*Terrell*] does not hold that no cause of action exists or can exist in Texas for damages arising out of an unsuccessful sterilization operation and did not speak to the question of whether there was a cause of action; but only as to whether certain types of damages could be recovered.

*Id.* at 894 (citing *Terrell v. Garcia*). The court reversed the summary judgment and remanded the cause for trial, holding that Garwood had placed at least her medical expenses in issue. *Id.* at 895.

No Recovery

Some jurisdictions do not allow any recovery. For example, in *Szekeres*, the Supreme Court of Nevada, citing the Restatement (Second) of Torts § 328A (1965) and *Byrd v. Wesley Medical Center*, 237 Kan. 215, 699 P.2d 459, 468 (1985), held that a parent can-

not recover damages after the birth of a normal, healthy child. *Szekeres*, 715 P.2d at 1078. The court continued:

> Our refusal to recognize the birth of a normal, healthy child as a compensable wrong does not in anyway interfere with a person's ostensible right to avoid conception or, *per Roe v. Wade*, to abort a fetus in the first trimester. Tort liability is part of a body of law which is directed toward the compensation of individuals for wrongs suffered within the scope of their legally recognized interests and where the law considers that compensation to be properly (and morally) required. "Tort obligations are in general obligations imposed by law on policy considerations to avoid some kind of loss to others." Prosser and Keeton, above, at 656. Our decision to disallow tort actions for the birth of a normal child, sometimes called "wrongful birth" actions, does not interfere with anyone's right to have children or not to have children; it simply holds that one cannot recover in tort for such an event because the constituent elements of a negligence tort, namely damages, is not present here.

*Id.* at 1078–79. Although affirming the district court's dismissal of the tort claims, the court remanded breach-of-contract claims that had also been asserted. *Id.* at 1079.

Neither McNew nor Galen directs us to any Texas case, not previously discussed, which denies recovery for the types of damages alleged by Flax.

Limited Recovery Allowed

Because we are reviewing an appeal from a take-nothing summary judgment, we must—as in *Garwood*—assume that the sterilization operation was negligently performed. *See Nixon*, 690 S.W.2d at 548–49; *Garwood*, 552 S.W.2d at 895. We agree with Flax that the statement in the *Zapata* opinion that "Texas does not recognize a cause of action for wrongful pregnancy" was, in light of the court's own statement that the plaintiff's pleadings did not assert an action for wrong-

ful pregnancy, unnecessary to the decision. *See Zapata*, 811 S.W.2d at 184. We further believe that it is not supported by the cases cited. *Id.*

We believe that the limited-recovery rule represents the better reasoned position. We therefore follow *Garwood* and hold that the types of damages Flax alleged resulted from the "wrongful pregnancy" are, upon a proper showing of medical negligence, recoverable. *See Garwood*, 552 S.W.2d at 895. The elements of damage that she alleges are among those listed by the Missouri Supreme Court as recoverable under the limited-damages rule. *See Girdley*, 825 S.W.2d at 298–99.[6]

## CONCLUSION

We reverse the summary judgment and remand the cause to the trial court for further proceedings consistent with this opinion.

---

6. We do not imply that the elements of damage that Flax alleges are the exclusive damages recoverable in this type of medical malpractice suit. As we have indicated, other courts have discussed other elements of damage. *Girdley v. Coats*, 825 S.W.2d 295, 298–99 (Mo.1992);

*Smith v. Gore*, 728 S.W.2d 738, 751 (Tenn.1987); *McKernan v. Aasheim*, 102 Wash.2d 411, 687 P.2d 850, 856 (1984); *Mason v. Western Pennsylvania Hosp.*, 499 Pa. 484, 453 A.2d 974, 976 (1982); *Beardsley v. Wierdsma*, 650 P.2d 288, 289 (Wyo.1982).