# Supreme Court of Texas

No. 22-0410

Michiel R. Noe, M.D., Individually and d/b/a Sun City Women's
Health Care,

*Petitioner*,

v.

Grissel A. Velasco,

*Respondent*

On Petition for Review from the
Court of Appeals for the Eighth District of Texas

**Argued November 28, 2023**

JUSTICE HUDDLE delivered the opinion of the Court.

A mother sued her doctor and his medical practice for allegedly failing to perform a sterilization procedure she paid for and then failing to tell her that the procedure was not performed. She claims the doctor's actions caused an unplanned pregnancy and the birth of her healthy fourth child, a daughter now eight years old. We must decide whether the mother has pleaded a cause of action recognized under Texas tort

law and, if so, whether she has adduced evidence of damages sufficient to defeat a no-evidence motion for summary judgment.

Texas law does not regard a healthy child as an injury for which a parent must be compensated but, rather, as a life with inherent dignity and profound, immeasurable value. Thus, while the mother's allegations state a claim for medical negligence under Texas law, the types of damages recoverable in a case like this one are far narrower than those available in the usual negligence case. Noneconomic damages, such as mental anguish and physical pain and suffering, together with the economic costs of raising the healthy child, are not recoverable as a matter of law. Rather, when a parent alleges that medical negligence caused the birth of a healthy child, recoverable damages are limited to the economic damages proximately caused by the negligence and incurred during the pregnancy, delivery, and postpartum period, such as medical expenses, if any.

Because the mother in this case adduced no evidence of such compensable damages in response to a no-evidence motion for summary judgment, we reverse the court of appeals' judgment in part and reinstate the trial court's judgment.

## I. Background

### A. Factual history

Dr. Michiel Noe operates a medical practice in El Paso as Sun City Women's Health Care. In April 2014, Dr. Noe and his staff began providing prenatal care to Grissel Velasco, who was pregnant with her third child. While a patient, Velasco received federally funded health insurance through the Children's Health Insurance Program (CHIP),

2

which covers certain prenatal, delivery, and postnatal care. CHIP does not cover the cost of surgical sterilization procedures.

Velasco was scheduled to undergo surgical delivery of her third child by cesarean section in July 2014. She alleges that she had arranged for Dr. Noe to perform a bilateral tubal ligation (BTL), a common sterilization procedure, during the surgery. Where Dr. Noe's surgery scheduling form asks "BTL Yes/No," it contains a handwritten notation of "Chip Can't Afford" with nothing circled on the "Yes/No" options. The maternity card that Dr. Noe's office issued to Velasco contains a section where "No" is circled for whether the patient will receive a BTL, and the word "CHIP" is written across it.

The day before the cesarean section, Velasco visited Dr. Noe's office and paid $400. She testified by deposition that an employee gave her permission over the phone to come to the office and pay for the BTL with her mother's credit card. A receipt shows a $400 payment from Velasco but does not state the reason for the charge. The next day, Dr. Noe successfully delivered Velasco's third child, but a BTL was not performed.

Velasco returned for one postnatal visit the following month. Dr. Noe's office records from the visit state: "The patient is requesting the following contraception method(s): tubal ligation," and "Note for 'Post-partum visit': Pt delivered 7/16/2014, spemc, dr noe, csection, boy, breast, Pt had Tubal." But the records conclude with notes that "Pt states that she had signed consent for BTL. Op report requested" and that "Pt instructed to abstain from sexual activity." The parties dispute whether Dr. Noe's staff raised any concern at this visit about whether

3

he had performed a BTL. But Velasco testified that Sun City staff asked her at the visit to return for a follow-up appointment and that Velasco did not.

Velasco became pregnant with her fourth child about a year later. She returned to Dr. Noe's office to inquire about how she could be pregnant and whether Dr. Noe would pay for the expenses of this unplanned pregnancy. The office reimbursed the $400 Velasco had paid for the BTL. Velasco ultimately gave birth to a healthy child.

### B. Procedural history

Velasco sued Dr. Noe.[1] Her live petition asserts claims for medical negligence, fraud, medical battery, deceptive trade practices, promissory estoppel, breach of express warranty, and intentional infliction of emotional distress. As to damages, she seeks to recover for medical and related expenses; physical pain and suffering; mental anguish; and the costs of maintaining, supporting, and educating her fourth child.

Through multiple combined traditional and no-evidence motions, Dr. Noe sought summary judgment as to all claims. Velasco filed a combined response regarding five claims,[2] with evidence. The trial court

---

[1] For purposes of our analysis, we use "Dr. Noe" to refer to the petitioner in both his individual and d/b/a capacities.

[2] The trial court granted special exceptions to Velasco's medical-battery and promissory-estoppel claims, and Velasco did not respond to the motions for summary judgment as to these claims. Velasco did not raise any issues concerning these claims on appeal, and the court of appeals deemed any challenges to summary judgment on these claims waived.

granted summary judgment for Dr. Noe as to all seven claims, and Velasco timely appealed.

A divided court of appeals reversed in part and remanded to the trial court for further proceedings. 645 S.W.3d 850, 870 (Tex. App.—El Paso 2022). The majority affirmed the grant of summary judgment as to most of Velasco's claims, reasoning that they were impermissibly recast health care liability claims. *Id.* at 866–69. But the majority reversed the grant of summary judgment as to the medical-negligence claim, holding that Velasco had produced some evidence of duty, breach, and damages. *Id.* at 859–66. Justice Palafox dissented without opinion. Dr. Noe petitioned this Court for review, and we granted the petition.

## II. Relevant law

In Texas, the relationship between a medical patient and her physician or other medical provider is governed by a multifaceted system of civil, criminal, and administrative laws and remedies. *See Lucas v. United States*, 757 S.W.2d 687, 690 (Tex. 1988) ("Texas courts have long recognized that victims of medical negligence have a well-defined common law cause of action to sue for injuries negligently inflicted upon them."); TEX. OCC. CODE §§ 151.001–168.202 (regulating the conduct of physicians), 151.003(2) (stating that the Texas Medical Board "should remain the primary means of licensing, regulating, and disciplining physicians"), 165.151–.160 (creating criminal penalties for certain conduct by physicians). Common-law suits in tort offer one nonexclusive way to regulate and remedy medical misconduct. *See Pediatrics Cool Care v. Thompson*, 649 S.W.3d 152, 165 (Tex. 2022) (Busby, J., concurring) ("Our legal system provides civil, criminal, and

5

administrative remedies for such misconduct that are not exclusive of each other and work together to promote better medical care and prevent future harm to patients.").

Tort law deals with civil wrongs, aside from a breach of contract, for which the law provides a remedy, most typically damages. *See, e.g.*, W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 1 (5th ed. 1984); 86 C.J.S. *Torts* § 1 (2017). The "guiding principle of Texas tort law" is that damages are meant to compensate "for the injury done." *J & D Towing, LLC v. Am. Alt. Ins. Corp.*, 478 S.W.3d 649, 676 (Tex. 2016) (quoting *Craddock v. Goodwin*, 54 Tex. 578, 588 (1881)). Yet not every consequence of another's tortious conduct is an injury or qualifies as "a compensable element of damages in every case." *City of Tyler v. Likes*, 962 S.W.2d 489, 494–95 (Tex. 1997); *see id.* at 494 (noting that Texas law does not allow recovery for mental anguish that results from every tortious act).

Typically, a tort claim for medical negligence is available to a patient when a medical provider's treatment falls below a specified standard of care and that breach proximately causes an injury to the patient. *Windrum v. Kareh*, 581 S.W.3d 761, 768 (Tex. 2019). But when a medical provider's tortious conduct results in the birth of a child, courts have wrestled with the many difficult legal and philosophical questions that follow: Should the law recognize the emotional and pecuniary costs of pregnancy, delivery, and childrearing as legal injuries to be remedied? If so, what types of damages are recoverable, and should they be offset by the benefits (tangible and intangible) the child's existence yields? Is it the province of courts to value the degree of joy or

6

difficulty a child brings her family? Can judges and juries rationally make these valuations?

This Court has not squarely addressed the validity of a claim for medical negligence[3] that results in an unplanned pregnancy and birth of a healthy child.[4] But we have considered cases in related contexts. In a case where a doctor's failure to diagnose a pregnant mother with rubella resulted in her baby's being born with impairments, we held that the parents could not recover damages for their alleged mental anguish. *Jacobs v. Theimer*, 519 S.W.2d 846, 850 (Tex. 1975). We explained that mental-anguish damages were not recoverable as a matter of law because such an award would be "based upon speculation as to the quality of life and as to the pluses and minuses of parental mind and emotion." *Id.* at 849. And we noted that recovery of damages for the expenses incurred in raising the child was barred for the same reasons. *Id.* But we held that other damages were available: the parents could

---

[3] The parties refer to this claim as a "wrongful pregnancy" claim. And courts in this state and elsewhere have similarly attached various labels to claims based on similar facts. *See Flax v. McNew*, 896 S.W.2d 839, 841 n.3 (Tex. App.—Waco 1995, no writ) (employing the terms "wrongful pregnancy," "wrongful birth," and "wrongful life" to describe claims arising from unplanned pregnancies); *see also Smith v. Gore*, 728 S.W.2d 738, 741 (Tenn. 1987). We find these labels more confusing than illuminating and thus refer to these types of claims more generally as claims for medical negligence.

[4] In *Hays v. Hall*, we resolved a question about when the statute of limitations accrues on a negligence claim and other claims against a doctor in a case involving an allegedly ineffective vasectomy that resulted in two unplanned pregnancies. 488 S.W.2d 412, 413–14 (Tex. 1972). We did not address the viability of the negligence claim or the proper measure of damages. *See Crawford v. Kirk*, 929 S.W.2d 633, 636 (Tex. App.—Texarkana 1996, writ denied) (noting that *Hays* "remanded the case for trial on the merits without directly addressing the viability of the underlying cause of action").

recover "expenses reasonably necessary for the care and treatment of their child's physical impairment." *Id.* at 850. We reasoned that such damages were "within the methods of proof by which the courts are accustomed to determine awards in personal injury cases." *Id.* at 849.

About a decade later, we held that "there is no cause of action in Texas for wrongful life," referring to an impaired child's claim for his or her own damages when, in the absence of a doctor's medical negligence, the parents would have terminated the pregnancy. *Nelson v. Krusen*, 678 S.W.2d 918, 925 (Tex. 1984). We identified two general reasons for this holding. First, courts are unwilling to hold that "a plaintiff can recover damages for being alive," given the "high value which the law and mankind has placed on human life, rather than its absence." *Id.* at 924 (quoting *Becker v. Schwartz*, 386 N.E.2d 807, 812 (N.Y. 1978)). Second, such a claim would require the weighing of life against non-life, "a calculation that cannot rationally be made." *Id.*

While this Court has not had occasion to address what, if any, damages parents may recover when medical negligence causes an unplanned pregnancy that results in a healthy child, our courts of appeals have, and there are some points on which they agree. Every Texas appellate court to consider the question has concluded that a parent cannot recover the economic costs after birth of raising a child who resulted from an unplanned pregnancy.[5] The courts also agree that,

---

[5] *See Pressil v. Gibson*, 477 S.W.3d 402, 409 (Tex. App.—Houston [14th Dist.] 2015, pet. denied); *see also Crawford*, 929 S.W.2d at 637; *Flax*, 896 S.W.2d at 841–42; *Hickman v. Myers*, 632 S.W.2d 869, 870 (Tex. App.—Fort Worth 1982, writ ref'd n.r.e.); *Sutkin v. Beck*, 629 S.W.2d 131, 132 (Tex. App.—Dallas 1982, writ ref'd n.r.e.); *Silva v. Howe*, 608 S.W.2d 840, 842 (Tex. App.—

at a minimum, parents may recover "the medical expenses associated with the failed procedure that produced the healthy but unwanted child."[6]

But there is a split about whether parents may recover other damages. The Tenth Court of Appeals appears to have taken the broadest view. In *Flax v. McNew*, a mother sued her doctor after a failed sterilization procedure resulted in an unplanned pregnancy and the birth of a healthy child. 896 S.W.2d 839, 840–41 (Tex. App.—Waco 1995, no writ). The court cited a decision from Missouri, purporting to be in line with the majority of jurisdictions, that allowed recovery of: (1) prenatal and postnatal medical expenses; (2) pain and suffering during pregnancy and delivery; (3) loss of consortium; (4) the cost of the corrective sterilization procedure; (5) emotional distress; (6) lost wages; (7) pain and suffering associated with the corrective procedure; and (8) any permanent impairment suffered by the parents. *Id.* at 843 (citing *Girdley v. Coats*, 825 S.W.2d 295, 298–99 (Mo. 1992)). Concluding that Missouri law represented "the better reasoned position," the court held that the damages the mother was seeking in *Flax*—disfigurement, physical impairment, physical and mental pain and suffering, and medical expenses—were recoverable. *Id.* at 845.

---

Corpus Christi–Edinburg 1980, writ ref'd n.r.e.); *Terrell v. Garcia*, 496 S.W.2d 124, 127–28 (Tex. App.—San Antonio 1973, writ ref'd n.r.e.).

[6] *Pressil*, 477 S.W.3d at 410; *see Crawford*, 929 S.W.2d at 637 ("[T]he parents of a normal, healthy child born after a failed sterilization procedure may recover damages for their actual medical expenses incurred as a result of the failed procedure."); *Flax*, 896 S.W.2d at 845 (allowing recovery of medical expenses); *Garwood v. Locke*, 552 S.W.2d 892, 895 (Tex. App.—San Antonio 1977, writ ref'd n.r.e.) (approving "recovery of medical expenses").

9

By contrast, at least three Texas courts of appeals have rejected *Flax*. Just a year after that case was decided, the Sixth Court of Appeals held that a mother's recoverable damages after an unsuccessful tubal ligation led to the birth of healthy twin girls were limited to "actual medical expenses incurred as a result of the failed procedure." *Crawford v. Kirk*, 929 S.W.2d 633, 637 (Tex. App.—Texarkana 1996, writ denied). Reviewing the landscape of Texas cases, including this Court's decision in *Jacobs*, the court concluded that *Flax* expanded the types of damages recoverable in such suits in a way that "contradict[ed] existing Texas authority." *Id.*

More recently, the Fourteenth Court of Appeals also "reject[ed] *Flax*'s expansion of the types of damages available" in cases alleging that negligence resulted in the birth of a healthy child. *Pressil v. Gibson*, 477 S.W.3d 402, 410 (Tex. App.—Houston [14th Dist.] 2015, pet. denied). Though *Pressil* arose in a legal-malpractice context, the *Pressil* court followed *Crawford* in concluding that recoverable damages were limited to "the medical expenses associated with the failed procedure that produced the healthy but unwanted child." *Id.*

Then, the First Court of Appeals rejected a father's claim for intentional infliction of emotional distress seeking mental-anguish damages from the birth of his healthy child, which he alleged occurred without his consent. *Hardin v. Obstetrical & Gynecological Assocs. P.A.*, 527 S.W.3d 424, 440 (Tex. App.—Houston [1st Dist.] 2017, pet. denied).[7]

---

[7] According to the father, his then-girlfriend removed his frozen sperm from a cryopreservation lab and used it to impregnate herself, all without his consent. *Hardin*, 527 S.W.3d at 427.

10

The court concluded that Texas public policy strongly favored a rule that prohibited recovery of mental anguish stemming from a healthy child's birth, based on "the intrinsic value of human life, the importance of promoting stable families, and the inherent difficulties in predicting and proving mental anguish under these circumstances." *Id.* at 428.

*Hardin* detailed several rationales for limiting damages in cases arising out of a child's birth. *Id.* at 438. "Most often, damages have been limited because the courts refuse to characterize the birth of a healthy (but unwanted) child as a compensable legal injury." *Id.*; *see Hickman v. Myers*, 632 S.W.2d 869, 870 (Tex. App.—Fort Worth 1982, writ ref'd n.r.e.) ("A parent cannot be said to have been damaged by the birth and rearing of a normal, healthy child."); *Terrell v. Garcia*, 496 S.W.2d 124, 125 (Tex. App.—San Antonio 1973, writ ref'd n.r.e.) (noting the previous "uniformly recognized rule" throughout the country was that "the birth of a normal child could not be considered an injury to the parents thereof"). This reasoning reflects the "strong public policy of preserving and protecting life" and the foundational recognition of "the dignity, sanctity, and profound value of life." *Hardin*, 527 S.W.3d at 438.

A second, similar rationale is that the law ordinarily would require that any compensable damages be offset by benefits flowing from the negligent act. *See Nelson*, 678 S.W.2d at 924. And when the result of the negligence is the life of a healthy child, courts have determined that the exercise of comparing benefits and detriments is unnecessary because the "intangible benefits of parenthood far outweigh" the associated burdens. *Hardin*, 527 S.W.3d at 439 (quoting *Pressil*, 477 S.W.3d at 409); *see Hickman*, 632 S.W.2d at 870 ("Rather than attempt

11

to value intangible benefits which derive from rearing a child, . . . our courts have simply determined that . . . these benefits to the parents outweigh their economic loss in rearing and educating a healthy, normal child.").

A third rationale for limiting damages commonly expressed in the caselaw is to avoid the adverse effects that surely would follow if the law encouraged parents to posit a child's existence as injurious. *Hardin*, 527 S.W.3d at 439 (noting that a contrary rule would encourage viewing children as legal injuries for which parents must be compensated); *see also Weintraub v. Brown*, 470 N.Y.S.2d 634, 641 (App. Div. 1983) ("We are loath to adopt a rule, the primary effect of which is to encourage, indeed reward, the parents' disparagement or outright denial of the value of their child's life."); *Wilbur v. Kerr*, 628 S.W.2d 568, 571 (Ark. 1982) (highlighting the "significant" damage to a child who "will some day learn that its parents did not want it").

Finally, courts point to the difficulties inherent in ascribing value both to human life and to the intangible costs associated with parenthood. As the *Hardin* court put it, assessment of a parent's emotional distress from the birth of a child is "too speculative to be recoverable." 527 S.W.3d at 440.[8]

---

[8] It bears mentioning that, like Texas courts that have considered the issue, courts in other jurisdictions have employed various rationales and reached varying conclusions about the scope of recoverable damages in cases like this one. As the comment and notes to the tentative draft *Restatement* discuss, courts in three states have declined to recognize a tort claim; more than thirty states have allowed a limited recovery only, denying any damages for the expenses of rearing a child but allowing for the recovery of certain damages from the birth and pregnancy; eight states follow a "benefits rule,"

In this case, however, a divided court of appeals followed the prevailing view of Texas courts on some issues but not others. Following its sister courts, the majority held that (1) the expenses of raising a healthy child were not recoverable and (2) Velasco could recover the actual medical expenses incurred as a result of the unsuccessful sterilization procedure. 645 S.W.3d at 863–64. But the majority disagreed with multiple Texas appellate courts by following *Flax* and concluding that Velasco could recover for "mental anguish and pain and suffering damages resulting from the pregnancy and/or the birth." *Id.* at 864. Holding that Velasco raised a genuine issue of material fact as to whether she suffered mental anguish from the pregnancy and birth, the court of appeals reversed the trial court's summary judgment as to her medical-negligence claim. *Id.* at 865–66.

### III. Analysis

**A. A claim for medical negligence is not foreclosed merely because the alleged negligence results in pregnancy and the birth of a healthy child.**

Dr. Noe first argues that Velasco's claim—which the parties dub one for "wrongful pregnancy"—should not be recognized in Texas as a

---

allowing for the recovery of childrearing costs but with an offset for the emotional benefits of having a child; and only one state follows a "full-damages rule," allowing for recovery of damages from pregnancy and childbirth and the full expense of childrearing. RESTATEMENT (THIRD) OF TORTS: REMEDIES § 26 cmt. c & reporters' notes (AM. L. INST., Tentative Draft No. 2, 2023). Though not yet adopted, the tentative draft *Restatement* follows a version of the limited-recovery approach that it describes as the rule in the majority of jurisdictions: (1) rejecting childrearing expenses; (2) allowing recovery for lost earnings, medical expenses, pain and suffering, and loss of consortium; and (3) allowing limited recovery for emotional distress based on the timing and nature of the distress. *Id.* § 26(a), (b) & cmt. c.

matter of law. To support this assertion, Dr. Noe cites the First Court of Appeals for the proposition that "Texas does not recognize a cause of action for wrongful pregnancy." *Zapata v. Rosenfeld*, 811 S.W.2d 182, 184 (Tex. App.—Houston [1st Dist.] 1991, writ denied). Velasco responds by citing the many Texas decisions that have recognized the viability of claims like hers.

We begin by noting that any split among our courts of appeals on this question appears to have been mended. After it decided *Zapata*, the First Court of Appeals clarified that "wrongful pregnancy" is not "its own cause of action" but a descriptive "phrase refer[ring] to a form of medical malpractice claim." *Hardin*, 527 S.W.3d at 432 n.4. That is correct, and it comports with the Texas cases on which Velasco bases her contention that Texas recognizes her cause of action as a viable claim for medical negligence. *See, e.g.*, *Pressil*, 477 S.W.3d at 408 ("[W]e agree that Texas does not recognize a unique cause of action called 'wrongful pregnancy'; rather, Texas recognizes the medical malpractice claims many courts describe as 'wrongful pregnancy' or 'wrongful conception' actions."); *Flax*, 896 S.W.2d at 843 (explaining that "wrongful pregnancy" is "merely a descriptive label for a form of malpractice" (citations omitted)).

We agree with Dr. Noe that there is no independent "wrongful pregnancy" cause of action under Texas law. And no purpose is served by labeling Velasco's claim anything other than a claim for medical negligence. Velasco alleges that Dr. Noe owed and breached duties of care in providing medical treatment, which caused her damages. The claim alleged is, in substance, a claim for medical negligence, which Texas law indisputably recognizes. For these reasons, the court of

14

appeals correctly concluded that Velasco pleaded a claim recognized under Texas law.

## B. Recovery for medical negligence that gives rise to the birth of a healthy child is limited.

We next consider what damages (if proven) are available in a medical-negligence claim that arises from the birth of a healthy child. Dr. Noe contends that there are no cognizable damages or, in the alternative, that damages are limited to a plaintiff's out-of-pocket medical costs. For her part, Velasco urges us to adopt *Flax*, as the court of appeals did, to allow broader recovery. Based on the precedents of this Court and our courts of appeals, we reject Velasco's (and *Flax*'s) broad conception of available damages as well as Dr. Noe's primary contention that no damages are recoverable.

***Noneconomic damages***. We start with the availability of noneconomic damages—a topic on which there is "disagreement among Texas intermediate appellate courts." *Hardin*, 527 S.W.3d at 437.

Noneconomic damages are those "that cannot be measured in money." *Noneconomic damages*, BLACK'S LAW DICTIONARY (11th ed. 2019). In Texas, they are defined by statute as damages awarded for "nonpecuniary losses" of all kinds, such as mental anguish, physical pain and suffering, loss of consortium, and loss of enjoyment of life. TEX. CIV. PRAC. & REM. CODE § 41.001(12). Four members of this Court have described noneconomic damages as "the exception, not the norm, in tort law." *Gregory v. Chohan*, 670 S.W.3d 546, 553 (Tex. 2023) (plurality op.).

Following *Flax*, the court of appeals held that noneconomic damages—mental anguish and physical pain and suffering—were

15

recoverable under Velasco's medical-negligence claim. 645 S.W.3d at 864–65. We disagree for the fundamental reason that Texas law does not regard a healthy child as an injury for which a parent should be compensated but, rather, as a life with inherent dignity and profound, immeasurable value.

Pregnancy, childbirth, and parenthood undoubtedly impose costs on the mother. The most immediate and common of these are the physical pain and discomfort that accompany pregnancy and childbirth and the weight of responsibility and worry a parent experiences over ensuring the child's present and future wellbeing. Yet despite these natural, and nearly universal, costs of parenting, society views a healthy child's arrival as a net boon and a gift, not an injury for which to seek legal recompense. *See Craddock*, 54 Tex. at 588 ("The thing to be kept in view is that the party shall be compensated for *the injury* done." (emphasis added)); RESTATEMENT (SECOND) OF TORTS § 902 cmt. a (AM. L. INST. 1979) ("Damages flow from an injury. . . . 'Injury' is . . . distinguished from 'harm,' which is a nonlegal word implying merely a detriment in fact."). In short, awarding damages for nonpecuniary costs that arise from pregnancy and the birth of a healthy child is fundamentally incompatible with Texas's longstanding recognition that a parent is not injured by the healthy child's birth or existence. *See Hickman*, 632 S.W.2d at 870; *see also Hardin*, 527 S.W.3d at 438.

The fact that a parent is not injured by her child's birth is what distinguishes this case from the typical medical-negligence claim. The Supreme Court of Nevada aptly made this point decades ago:

> A case involving the birth of a normal child is analytically distinguishable from an ordinary medical negligence action

16

with its attendant "resulting injurious consequences," such as death, disability or other adverse iatrogenic consequences; and it should not be facilely assumed that child-birth is a "wrong" or the type of injurious consequence for which society should, through its courts, as a matter of public policy, give reparation.

*Szekeres v. Robinson*, 715 P.2d 1076, 1078 (Nev. 1986).

The court of appeals nevertheless concluded that at least some noneconomic damages—those arising from pregnancy and childbirth—were available because they are separable from those arising from having to raise another child. 645 S.W.3d at 864–65. Based on this distinction, the court found it feasible for factfinders to separately value the "physical pain and psychological stressors sustained by parents" because of pregnancy and childbirth from the mental anguish resulting from "the child coming into their life." *Id.* at 865. We find this reasoning unpersuasive and unworkable. Pregnancy and childbirth are necessary to (and inseparable from) bringing about the child's life, and juries cannot compensate a mother for the mental anguish and physical pain of either pregnancy or childbirth without treating the child's very existence as an injury. Moreover, "[c]ompensation is the chief purpose of damages awards in tort cases," and damages awards are meant "to place the plaintiff in the position in which [s]he would have been absent the defendant's tortious act." *J & D Towing*, 478 S.W.3d at 655. To award money damages for experiences inherent to a healthy birth wrongly suggests the mother's rightful position is one where the child had never been born—i.e., that carrying a healthy baby to term is an injury. Given the inextricable link between the nonpecuniary damages sought and the very existence of the child, we hold that a parent may

17

not recover noneconomic damages in a medical-negligence case arising from a healthy child's birth.

***Economic damages.*** We next consider economic damages, which are those "intended to compensate a claimant for actual economic or pecuniary loss." TEX. CIV. PRAC. & REM. CODE § 41.001(4). Velasco seeks to recover medical expenses and the costs of raising her daughter, such as the costs of providing shelter, food, and an education. Dr. Noe responds that these costs—indeed, *all* damages resulting from medical negligence that causes the birth of a healthy child—are unrecoverable as a matter of law.

We agree with the court of appeals that, in a case in which medical negligence proximately caused the birth of a healthy child, the economic expenses of raising the child are not recoverable as a matter of law. 645 S.W.3d at 863–64. Barring recovery of this category of damages aligns with the objection we articulated decades ago in *Jacobs* to suits for "damages for all expenses incurred and to be incurred in raising the child." 519 S.W.2d at 849. It is also the consensus rule among the Texas courts of appeals that have considered the issue. Velasco offers no meaningful argument for departing from these precedents and expanding potential liability to the degree that it could cripple obstetricians. *See Sorkin v. Lee*, 434 N.Y.S.2d 300, 303 (App. Div. 1980) (concluding that to impose "the myriad costs of raising a normal healthy child for some indefinite period in the future" is "to inflict a penalty on [the] defendant that is out of all proportion to his wrong").

18

We also agree with the court of appeals' conclusion that medical expenses incurred during the pregnancy and postpartum period as a result of medical negligence are recoverable, as are the expenses incurred for the sterilization procedure that was not successfully performed. 645 S.W.3d at 864. Dr. Noe urges us to adopt a rule that forbids recovery of any damages whatsoever. But he cites no Texas authorities that have forbidden all damages and, instead, concedes that multiple Texas courts have permitted the recovery of medical expenses. Additionally, in *Jacobs*, this Court permitted the recovery of "expenses reasonably necessary for the care and treatment of [a] child's physical impairment" that were the foreseeable result of the physician's negligence. 519 S.W.2d at 850. We see no reason to foreclose the recovery of the economic damages proximately caused by the medical negligence and incurred during the pregnancy, delivery, and postpartum period.

We emphasize, however, that, in deeming the mother's prenatal, delivery, and postnatal medical expenses recoverable, the compensable injury is not the life of the child or even the pregnancy or birth. Rather, the injury is the actual economic costs for medical care incurred during the pregnancy and postpartum period. Those medical expenses are a direct and obvious result of the medical negligence, are easily calculable according to the ordinary techniques of tort law, and have no tendency to disparage the child's existence.

### C. Velasco adduced no evidence of compensable damages.

Having determined what categories of Velasco's claimed damages are recoverable, we turn to applying these principles to the summary-

19

judgment record in this case. Velasco sought damages for medical expenses; physical pain and suffering; mental anguish; and the costs to maintain, support, and educate her daughter. Our holding that noneconomic damages and the economic costs of rearing a child are not recoverable leaves only Velasco's claim for medical and related expenses as potentially compensable.

But Velasco adduced no evidence of such damages in response to Dr. Noe's no-evidence motion for summary judgment. As the court of appeals explained, and Velasco does not dispute, Dr. Noe reimbursed the $400 Velasco allegedly paid for the BTL, and Velasco otherwise did not "present any evidence demonstrating she incurred any medical complications or expenses as a result of the pregnancy or birth." 645 S.W.3d at 864. In the absence of any evidence of compensable damages, Velasco failed to raise a genuine issue of material fact on damages, which was her burden on summary judgment.[9]

## IV. Conclusion

When a mother alleges that medical negligence proximately caused an unplanned pregnancy, that claim is not foreclosed merely because the ultimate result is the birth of a healthy child. But the recoverable damages are limited. The mother may recover the cost of the sterilization procedure and economic damages designed to compensate for injuries proximately caused by the negligence, such as medical expenses incurred during the pregnancy, delivery, and

---

[9] Our holding as to damages makes it unnecessary to resolve Dr. Noe's alternative argument that the court of appeals erred in concluding that Velasco presented sufficient evidence to raise a fact issue on duty and breach.

20

postnatal period, if proven. But Texas law does not permit recovery of the expenses of raising the healthy child, or any noneconomic damages, because the birth and life of a healthy child do not constitute an injury under Texas law.

Here, Velasco alleged a claim for medical negligence, but most of the damages she sought—the costs of rearing her daughter, mental anguish, and physical pain and suffering—we have held are unrecoverable. With respect to the damages we have held are recoverable, Velasco adduced no summary-judgment evidence to support an award of such damages. The trial court correctly granted summary judgment, and we therefore reverse the court of appeals' judgment in part and reinstate the trial court's judgment.

Rebeca A. Huddle
Justice

**OPINION DELIVERED:** May 10, 2024

21